H. MUELLER MFG. CO. v. A. Y. McDONALY & MORRISON MFG. CO.

(Circuit Court, N. D. Iowa, E. D.   October 14, 1908.)

No. 235.

**1. PATENTS (§ 17*)—INVENTION—CHANGE OF FORM.**

The making in one piece of that which was formerly made in two, or in two pieces what was made in one, when the function of the device is not changed is not invention, but the work of the mechanic only.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 17; Dec. Dig. § 17.*]

**2. PATENTS (§ 328*)—ANTICIPATION—STOP AND WASTE COCK.**

The Mueller patent No. 513.272, for a stop and waste cock, is for specific improvements only in stop and waste cocks previously in common use, and must be strictly limited and its claims interpreted in the light of its specifications, and, as so construed and limited, it is void for anticipation by numerous prior patents and structures, which disclose each one of its elements or its equivalent and produce the same result.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 328.*]

In Equity.   On final hearing.

Suit for an alleged infringement of letters patent No. 513,272, issued to Henry Mueller January 23, 1894, for improvements in interchangeable right and left stop and waste cocks, and assigned to the complainant.   Defense, that the patent is anticipated by prior patent and the public use of other well-known devices, and noninfringement.

See, also, 132 Fed. 585.

Bond, Adams, Pickard & Jackson and M. M. Cady, for complainant.
Thos. A. Banning, Banning & Banning, and Hurd, Lenehan & Kiesel, for defendant.

REED, District Judge.   Interchangeable right and left stop and waste cocks were well known in the plumber's trade and in common use long before the patent in suit was applied for.   In the beginning of the specifications of this patent it is stated:

"This invention relates to interchangeable right and left stop and waste cocks, and it is intended to protect the adjustable stops of said cocks, and to make the connection of the same much more secure."

After describing the invention and its operation, the specifications continue:

"The operation and the general result above described is substantially the same as in other interchangeable stop and waste cocks, but there is in my device a specific peculiarity which I will now explain.   In other cocks of like character the adjustable stop bearings are held in position by a screw, and in consequence thereof such connections are somewhat insecure.   Moreover, the stops are exposed to the accumulation of dirt, and, on account of the customary location of such cocks, such exposure is liable to interfere with the correct action of the stops.   In my device the stops are inclosed by the stop cap itself, and the square hole of the cap fits over the square end of the plug and forms a practically rigid connection.   The adjustment of the stops is to an extent of ninety degrees, so that the square bearings of the cap and plug are peculiarly fitted to the purpose.   It is obvious, however, that octagon bearings, for instance, would enable the same result to be effected in nearly as

desirable manner, so that, in using the word 'square' throughout the specification and claim, it is intended to be typical of prismatic as opposed to circular."

There is but a single claim, and that is for—

"an interchangeable stop and waste cock consisting of a shell having a waste hole, and a rectangular stop projection 11 formed on its side, a plug having a waste hole and a projecting end square in cross-section, a cap having a square hole in its end adapted to engage the square end of the plug, stop bearings in the cap adapted to entirely inclose and strike the stop projections of the shell, and a handle on the plug outside the cap substantially as set forth."

For convenience of reference a copy of the patent is attached hereto.

It thus appears from the patent itself that the operation of the alleged invention and the general result that it is intended to accomplish are not new, and that the patent is for specific improvements only in stop and waste cocks then in common use. It is not by any of its terms a new combination of old elements to produce a new result, but is for specific improvements only in specified elements of prior combinations in a well-developed art, is in no sense a primary invention, and must be strictly limited to its claim interpreted in the light of the specifications describing the invention. Miller v. Manufacturing Co., 151 U. S. 186, 207, 208, 14 Sup. Ct. 310, 38 L. Ed. 121; Cimiotti Co. v. Am. Fur Co., 198 U. S. 399, 414, 25 Sup. Ct. 697, 49 L. Ed. 1100; Kokomo Fence Machine Co. v. Kitselman, 189 U. S. 8, 18, 19, 23 Sup. Ct. 521, 47 L. Ed. 689; St. Louis Street Flushing Co. v. Am. St. Flushing Co., 156 Fed. 574, 84 C. C. A. 340; Union Match Co. v. Diamond Match Co. (C. C. A.) 162 Fed. 148, 155.

What, then, is intended to be accomplished by the improvements claimed by the patent in suit? In the language of the specifications two things only, (1) to protect the adjustable stops of the stop and waste cocks then in use from the accumulation of dirt that may interfere with their correct action, and (2) to make the connection of the same much more secure. Neither the specifications nor the claim suggest any other improvement upon the earlier devices.

To sustain its defense of anticipation the defendant put in evidence a number of prior patents, and a stop and waste cock (not patented) made, placed upon the market, and sold by Cooper, Jones & Cadbury of Philadelphia, and Haines, Jones & Cadbury, their successors in business, some 10 years before the patent in suit, and maintains that the Kennedy patent of 1884, with any suitable handle, the Walsh patent of 1886, the Van Wie patent of 1891, and the Cooper, Jones & Cadbury cock, with the cap and handle in one piece of the Poppenburg or German patent of 1889, clearly anticipate the patent in suit. Mr. Bond, defendant's expert, describes in detail these various patents and the Cooper, Jones & Cadbury exhibit (hereinafter called, for convenience, the "Cadbury Exhibit"), compares them with that of complainant, and is then asked this question:

"Q. 28. Please state which one, if any, of the exhibits offered in evidence by the defendant contain the combination of all the features and elements of the Mueller claim, either in their exact form or in what you consider their plain mechanical equivalents."

He answers:

"The combination of elements or the fair equivalent of such combination, in my opinion, is found in the Ragan 1880 patent, the Zerbe 1881 patent, the Broughton 1881 patent, the Kennedy 1884 patent, and the Bailey & Grace 1892 patent. Each of these patents has the shell with the waste hole and stop or stops, a plug with a waste hole, and a stem square in cross-section or otherwise formed for the attachment of a cap, a cap on the stem of the plug, and stop bearings either on the cap or on the shell to inclose the opposing stop bearing and limit the movement of the plug, and a handle by means of which the plug can be turned. The mechanical exhibit 'Cooper, Jones & Cadbury Cock' has all of the elements called for in the claim of the Mueller patent, in my opinion."

164 F.—63

As the Cadbury exhibit is not patented, its construction (aside from the device itself) appears only from its description by Mr. Bond, which is as follows:

"Q. 12. Please take up this exhibit cock, marked 'Defendant's Exhibit, Cooper, Jones & Cadbury Cock,' and explain its construction and operation, and compare it with the stop and waste cock shown, described, and claimed in the Mueller patent sued on, and point out the similarities which you may find between such exhibit and that of the Mueller patent.

"A. The cock 'Defendant's Exhibit, Cooper, Jones & Cadbury Cock' is a stop and waste cock. This stop and waste cock has a shell or casing with a waste opening on one side, and with two rectangular stops on the wall on opposite sides of one of the necks or extensions of the shell. The cock has a plug in which is a waste opening to coact with the waste opening in the shell. The plug has a stem, which is square in cross-section. The cock has a cap with a central square opening to receive the square stem of the plug; the cap has a depending rim or flange, which is cut away on opposite sides to form recesses terminating in bearings or stops to coact with the stop or stops on the shell to limit the turning of the plug in opening and closing the cock. The cap has integral therewith a handle, by which the turning of the plug is attained, and the cap with the handle is held in position on the square end of the stem by means of a washer and set-screw, the stem of the screw threading into the end of the plug.

"This * * * exhibit * * * has a shell with a waste opening and a rectangular projecting stop, as called for by the claim of the Mueller patent; it has a plug with a waste opening, and the stem of the plug is square in cross-section, as called for by the claim of the Mueller patent; it has a cap with a square opening to receive the square end of the stem of the plug, as called for by the claim of the Mueller patent; it has on the cap a depending flange which is cut away to form recesses with adjustable bearings to coact with the stop on the shell and limit the turning of the plug as in the Mueller patent and claim; and it has a handle for operating the plug, as called for by the Mueller patent and claim. The cock * * * has therein the construction and operation of the Mueller cock, and operates in the same manner and attains the same result as does the cock of the Mueller patent, * * *.

"The general operation set forth in the Mueller specification to which my attention is called in the question is the same as found in the prior art, as disclosed by the exhibits to which reference has been made. The prior patent shows that it is old to slip a cap onto the square end of the plug in such position that the stops may swing in the right direction to permit the plug to open. The prior patents disclose that it is old to connect a handle to a socket, so that when the handle is turned the valve will open and so that when the handle is turned the waste hole of the plug will receive the back water, and such water will waste through the waste hole of the plug and shell. The prior art also discloses that when the plug is completely open the stops will engage and arrest the motion of the handle and the plug, and this whether the valve plug is open for supplying water or is turned to open the waste. The prior art also shows that cocks which could be reversed and operate as right or left hand cock was an old idea in the art, so that, by turning the cock end for end and replacing the same in position to permit a reverse turn of the plug and securing the handle in proper position, the cock would operate. The prior art discloses that every feature of operation set forth for the operation of the Mueller cock was old and well known in the cock of the prior art as disclosed by the exhibits in evidence."

Mr. Robert H. Wiles, an expert on behalf of complainant, states the requirements of an interchangeable right and left stop and waste cock to meet the demands of the practical art of the plumber's trade as shown by the testimony, and summarizes such requirements as follows:

"First, the cock must be provided with stops limiting the partial rotation of the plug in any given operation to approximately 90 degrees.

"Second, in setting the cock the waste hole of the shell must be in front.

"Third, the cock must be of such construction that it may be set in either the right-hand or left-hand position, and its parts may be adjusted so that when the plug is in position, to permit the normal flow of water the handle will be parallel to the body or casing of the cock, and when the plug is in position to stop the flow of water and permit the wasting of the water from the proper part of the pipe the handle will stand at right angles to the shell or body of the cock.

"Fourth, the cock must be of such construction that when it is installed in the line of pipe, either the left-hand or the right-hand position, the waste hole of the plug will be presented rearwardly (that is, away from the waste hole of the casing or body) when the plug is in position to permit the normal flow of water through the pipe; and, as the plug is rotated from this position into the position to permit waste of the water from the proper portion of the pipe, the handle must swing forward and not backward.

"Fifth, the cock must be of such construction that it may be inserted in a line of pipe without reference to the direction of flow of water in the pipe; and its parts must be so adjustable as to adapt it for wasting the water from the pipe on either side of the cock when the handle is at right angles to the body of the cock—the cock being adapted to permit the normal flow of water through the waterway of its plug when the handle is parallel to the body or casing."

He then explains at length the patent in suit, compares it with the prior patents and the Cadbury exhibit put in evidence by the defendant, and says that the device of the patent in suit as made by complainant and that manufactured by the defendant in alleged infringement thereof are the only ones that do or that can be made to represent all of the requirements thus stated by him. He reaches this conclusion upon the fact alone that the cap and handle of the Cadbury exhibit and of others of the patents are made in one piece, or "integrally" as he terms it. He concludes his opinion upon this point as follows:

"The fact is, however (as has been clearly demonstrated), that the employment of an integrally-formed cap and handle like that of the German patent, or the Haines, Jones & Cadbury exhibit, is fatal to the proper operation of an interchangeable right and left stop and waste cock; and no structure anticipating the Mueller device of the patent in suit can be produced by adding such a one-piece cap and handle to the Kennedy stop and waste cock or to any other exhibit of the prior art in evidence herein."

The opinions of equally competent experts resting upon the same facts and so directly opposed to each other afford little aid in determining the question at issue. It must therefore be determined from the facts shown by the testimony.

That the cap of the Poppenburg or German patent of 1889, and of the Hirsch and Walsh patents, are designed to, and do in fact, inclose and securely protect the stop bearings and keys of the devices of those patents to the same extent and in substantially the same way that the cap of the patent in suit protects and secures its bearings, is not disputed; but the handle of the Poppenburg device, and of some others of the patents where it is referred to, is made integrally with the cap, and this is said to be fatal to the proper operation of an interchangeable right and left stop and waste cock. The Poppenburg device is not a waste cock, and of course is not intended as an interchangeable device. That of the Kennedy patent is, and may be operated by any suitable handle; that in other respects it anticipates the complainant's device is not seriously disputed; and, if the Cadbury exhibit can be

operated to meet the requirements stated by Mr. Wiles with its cap and handle made integrally, it seems clear that that device, not to name others, anticipates the patent in suit. The validity of complainants' patent, therefore, rests upon the fact alone, as stated by its expert Mr. Wiles, "that the employment of an integrally-formed cap and handle like that of the German patent or the Cadbury exhibit is fatal to an interchangeable right and left stop and waste cock." · If this is true, there is nothing in the specification or claim of the patent in suit to indicate that the patentee intended to improve upon the prior devices by the use of a cap and handle made separately from but adjustable to each other, or that he intended to secure any such result in describing his invention or in the claim of his patent. The opening statement of the specifications negatives any such intention, and it is not "particularly pointed out or distinctly claimed" as a part of his invention. But admitting that the patentee is entitled to all of the uses to which his invention may be applied, whether or not he describes such uses (Miller v. Eagle Co., 151 U. S. 186, 201, 14 Sup. Ct. 310, 38 L. Ed. 121), and that the adjustment of the handle and cap to each other is one of such uses, it is clearly anticipated by the Van Wie patent of 1891, which points out that the cap and handle are made separately, and that the handle, C, is adjustable with the cap or washer, C, which fits over the end of plug, B, substantially as in the patent in suit; also by the Bailey & Grace patent of 1892, the claim of which calls for " * * * the combination with the plug of an attachable and adjustable handle, a collar set on a plug and movable therewith * * * having a tongue adapted to be moved separately from the handle and adjustable in either of two positions ninety degrees apart, and stops on the shell to limit the movement of the tongue." Furthermore, the making in one piece of that which is in two, or in two pieces that which is in one, when the function of the device is not changed, is not invention, but the work of the mechanic only. Howard v. Detroit Stove Works, 150 U. S. 164, 169, 170, 14 Sup. Ct. 68, 37 L. Ed. 1039; Standard Castor & Wheel Co. v. Castor Socket Co., 113 Fed. 162, 51 C. C. A. 109.

Is it true, however, that the Cadbury exhibit cannot be properly operated as an interchangeable right and left stop and waste cock with a cap and handle integrally formed? Complainant has prepared what it calls an illustrative exhibit upon which it has mounted two pairs of stop and waste cocks, each pair fitted to pipe set on a board. One of the pairs, the lower, is of complainant's stop and waste cocks as made by it, set in right and left hand positions, and in those positions it is claimed that each responds to all of the requirements of an interchangeable right and left stop and waste cock as stated by Mr. Wiles. The other pair, the upper, is made by complainant to represent the Cadbury exhibit, and is claimed to be set in right and left-hand position, and, as set, the right-hand device, it is conceded, responds to all of the requirements stated by Mr. Wiles; but complainant contends that the other does not, because, as it says, the handle of this cock when the flow of water through the pipe is unobstructed is crosswise to or at right angles with the line of pipe, and when the water is shut off the handle is in line with or parallel to the pipe. This contention

cannot be sustained because (1) this device as set upon the board is set in right-hand position, that is, for the flow of water from right to left if the board is set horizontally, or from below upward if set vertically, this being indicated by the position of the waste opening of the plug when brought into line with the waterway through the pipe; (2) the device can be set as a left-hand cock, that is, for the flow of water from left to right when the board is in a horizontal position or from above downward when in a vertical position, with the handle in line with the pipe when the flow of water is free, and crosswise to the pipe when shut off. This may be done as follows: When the handle is in line with the pipe, remove the handle and cap and rotate the plug 180 degrees in either direction, which will bring the waste opening of the plug in the opposite direction; reset the handle and cap with the handle out and crosswise to the pipe, then turn the handle down, and this will present the waste opening of the plug rearwardly, or opposite to the waste opening of the shell, and bring the waterway of the plug in line with the opening through the pipe, and the device is thus changed to a left-hand position, in which it was probably intended to be, and readily can be, set upon a board, and will respond to all of the requirements stated by Mr. Wiles for such a device when so set. That both complainant's device and the true Cadbury exhibit in evidence, or the one prepared by complainant for its illustrative exhibit, may be originally installed in either a right or left hand position as the direction of the flow of water through the pipe may require, seems clear and to be conceded by complainant; but its contention is that, if the Cadbury exhibit be set in a right-hand position when a left-hand cock is required, or vice versa, it cannot be changed to operate in the other position without taking it out and resetting it; and this it attempts to demonstrate by this illustrative exhibit. If the Cadbury cocks upon that exhibit are true Cadbury cocks, its contention may be correct, providing the location, form, and number of the adjustable bearings are an essential feature of the device and of the complainant's patent. The defendant, however, contends that the Cadbury cocks upon complainant's illustrative exhibit are not true Cadbury cocks; that the plug or key is that of complainant's device set in a Cadbury shell. Just what the construction of the Cadbury plug as made by complainant for that exhibit is does not appear in evidence, save by the plug itself, and that Mr. Philip Mueller, superintendent of the complainant company, says that he had them made to represent the Cadbury cock because complainant had none of that manufacture, but it is not disclosed from what source he obtained the pattern for the plug or key of this device. The function of the waste opening of the plug in the Cadbury exhibit, as it is in complainant's and the other devices in evidence, is to drain the water from the proper portion of the pipe when the flow is shut off. It is obvious that this may be done as effectually if the waste opening of the plug is at a proper distance either side of its longitudinal center as when it is in the center. This will readily suggest itself to any ordinary mechanic upon examining the devices; and it is so made in the Kennedy cock of 1884, and defendant's stop and waste cock of 1883, and the Ohio cock, and perhaps

others. If such waste opening is in the longitudinal center of one wall of the plug, then it may come into register with the waste opening of the shell or outer case of the device; hence the rule, as stated by Mr. Wiles, that the waste opening of the plug must be presented rearwardly, or to the back of the shell, when the flow of water is unobstructed through the pipe, in order to prevent its escape through the waste port of the shell. If, therefore, the waste opening of the plug is at one. side of, and not in, its longitudinal center, it can never come into register with the waste opening of the shell, and it can be presented to the front as well as to the rear of the shell without the danger of water escaping through it, as it would if it was in line with the waste opening of the shell; and when shut off the water will drain from the proper portion of the pipe through the waste opening of the plug into the water way thereof and escape through the waste port of the shell. This will more clearly appear by reference to the Cadbury exhibit, the Kennedy cock of 1884, defendant's stop and waste cock of 1883, the Ohio cock, or the drawings of complainant's patent or to its device. The waste opening in the plug of the true Cadbury exhibit in evidence is not in the longitudinal center of the plug, but is at one side thereof, so that in rotating the plug its waste opening can never come into register with the waste opening of the shell. It is the contention of the defendant's counsel that this construction of the plug of the Cadbury exhibit was not observed by complainant when it prepared the so-called Cadbury cocks for its illustrative exhibit, and that this is the reason why those cocks cannot be changed from left to right hand position or vice versa, after having been installed in the pipe without taking them out and resetting them, or so changing the adjustable bearings as to permit of such interchange. This contention seems to be correct. Certain it is that the waste openings of the plugs in the so-called Cadbury cocks upon complainant's illustrative exhibit are in the longitudinal center of the plugs and will register with the waste ports of the shells the same as do those in complainant's device. It is equally certain that if they were at one side and not in the center of the plug, and could not come into register with the waste ports of the shells, they could be changed to right or left hand position as the direction of the flow of water through the pipe might require without taking them out and resetting them. This may be readily demonstrated with complainant's illustrative exhibit. The upper right-hand Cadbury cock of that exhibit is set in right-hand position; that is, for the flow of water upward when the board is in vertical position, or from right to left when in horizontal position. Assume the flow of water through this device to be from the opposite direction, also that the waste opening of the plug is at one side of, and not in its longitudinal center, and cannot be brought into line with the waste port of the shell, then it may be changed to a left-hand position without taking it out and resetting it in the following manner, viz.: While the handle is in line with the pipe and the waterway open, remove the handle and cap, and rotate the plug 180 degrees in either direction; this will bring the waste opening of the plug in the opposite direction from what it was; then reset the handle and cap in the same position as before; this

leaves the waterway open, and brings the handle in line with or parallel to the pipe and the waste opening of the plug towards the front of the shell, but as it is not in line with the waste port of the shell the water cannot escape through it; then turn the handle outwards or away from the pipe, the only way that it can be moved, and the flow is shut off; the water in the other portion of the pipe will then drain through the waste opening of the plug into the waterway thereof and escape through the waste port of the shell as before; the device is thus changed to a left-hand position. The other cock, if properly set in left-hand position, may be changed to a right-hand position in the same way.

The testimony shows that the cap of the complainant's cock as made by it is not made according to the drawings of the patent, but has the rib 7 shown in Fig. 3 of those drawings cut away to form two additional adjustable stop bearings 8, opposite to those shown in that figure, so that there are four adjustable stops in the interior of the cap as made, instead of two as shown in the drawings; also upon one corner of the shank 3 of the plug is a lug or projection, and the square opening in the cap is recessed or cut away in two of its corners to receive this projection. Mr. Wiles is of opinion that these are but immaterial variations or details of construction that do not affect the principle of the device; and in this he seems to be correct as to the bearings at least, for neither the specifications nor the claim of the patent locate or fix the number or form of these bearings in the interior of the cap, and such bearings may be increased to any number requisite to the proper operation of the device and their form and location fixed to secure this result. This would not be invention, but the work of the mechanic only. Howard v. Detroit Stove Works, 150 U. S. 164, 167, 14 Sup. Ct. 68, 37 L. Ed. 1039; Cimiotti Co. v. Am. Fur. Co., 198 U. S. 399, 414, 25 Sup. Ct. 697, 49 L. Ed. 1100. It is obvious, however, that the two additional stop bearings increase the adjustable capacity of the cap upon the shank 3 of the plug, and permit such adjustment to an extent approximately of 180 degrees instead of 90, while limiting the rotation of the plug to an extent of 90 degrees in opposite directions from the permanent stop bearing 11 upon the shell. But if the additional bearings and form thereof are mere details of construction, not affecting the principle of the device, the same rule must apply to the Cadbury and other exhibits of the prior art, and there can be no doubt that the depending rim or flange of the cap of the Cadbury device can be cut away to form additional bearings and permit their adjustment to the stops upon the shell so that it can be changed to a right or left hand position after being installed in the pipe according as the direction of the flow of water may require, even with the waste hole of the plug in its longitudinal center as it is in complainant's device, instead of at one side as it is in the true Cadbury exhibit. Be this as it may, it is plain that the true Cadbury exhibit is an interchangeable right and left stop and waste cock responding to all of the requirements of such a device as stated by Mr. Wiles, though its handle and cap are made integrally instead of in two pieces. Any handle that will fit the socket of the shank 3 of the

plug of complainant's device will effect its interchange from a right to a left hand position, because that is effected by the rotation of the plug, and the cap through the plug; and the only function of the handle is to rotate them and indicate whether or not the flow of the water is free through the pipe, and this function is as effectually performed by the handle of the Cadbury exhibit as by that of the complainant's device.

Finally, it is urged that the cap of the Cadbury exhibit does not inclose and protect the adjustable and permanent stop bearings of the device, and that such inclosure and protection are essential features of the complainant's patent. The claim of the patent for "stop bearings in the cap adapted to entirely inclose and strike the stop projections of the shell" is not aptly expressed, and it may be doubtful, to say the least, if this claim conforms to the statutory requirements. It is probably intended for "stop bearings entirely inclosed in a cap, and adapted to strike the projections of the shell." For the purpose of this hearing it may be considered as so expressed. If the Cadbury cap was the latest development of the art in this respect prior to the complainant's patent, it might well be held that the cap of the complainant's device was such an improvement upon the Cadbury cap as would sustain that feature of the patent in suit. But the Hirsch patent of 1883, the Walsh patent of 1886, and the Poppenburg or German patent of 1889, are each intended to inclose the bearings and prevent the access of sand and grit to the interior construction of the device, while the drawings of other patents show the device to be covered with a hood or cap that do so inclose and protect them. If in the actual construction of the devices they do not do so as securely as the complainant's cap, the fault is in the workmanship and not in the design of the caps, as that is intended that the caps shall inclose and securely protect them, and the skilled workman will so make them. In fact, the cap alone of the Poppenburg patent of 1889 by properly adjusting its stop bearings and making it and the square opening therein of the proper size, can be transferred to complainant's device, and it will perform in that position all of the functions of the complainant's cap.

Mindful of the rule that in the law of patents it is the last step that wins (The Barbed Wire Patent, 143 U. S. 275, 283, 12 Sup. Ct. 443, 36 L. Ed. 154), and that a simple or slight improvement of a prior device if it substantially changes the prior one, or is such that a new result is produced, or an old result attained in a more economical and efficient way, is sufficient to sustain a patent for such improvement (Seymour v. Osborne, 11 Wall. 516, 20 L. Ed. 33; National Hollow B. B. Co. v. Interchangeable B. B. Co., 106 Fed. 693, 707, 45 C. C. A. 544), a patient study of the complainant's patent and comparison of it with the earlier patents and devices in evidence leads to the conclusion, that the patent in suit is not a step in advance of the prior inventions and well-known devices, and that its alleged improvements are anticipated by the Cadbury exhibit with the cap of the Poppenburg or German patent of 1889, and the Kennedy patent of 1884, not to mention others of the patents in evidence. The bill should therefore be dismissed at complainant's cost, and it is so ordered.