# RE FLEUSS.

PATENTS; ANTICIPATION; PATENTABILITY; NOVELTY; STRUCTURAL DETAIL.

1. Of the two features relied upon as patentably novel, in a claim reciting an appliance for supplying oxygen and air to divers and others, comprising a plurality of gas cylinders, a hollow connection between the said cylinders, a curved neck integral with said connection adapted to lie adjacent to one side of the body of the user of the apparatus, and means at the outer end of said curved neck adapted to control the supply of gas to the said user of the apparatus,—the

integral character of the neck was anticipated by Suess, French patent September 7, 1904, and the curved formation was anticipated by the same and also by Garforth patent of December 29, 1908.

2. No novelty patentable over a prior patented device which is not otherwise distinguishable, is involved either in curving or in making integral rather than separable the neck recited in a claim of an appliance for supplying oxygen and air to divers and others, comprising a plurality of gas cylinders, a hollow connection between the said cylinders, a curved neck integral with said connection adapted to lie adjacent to one side of the body of the user of the apparatus, and means at the outer end of the said curved neck adapted to control the supply of gas to the said user of the apparatus. (Citing *Re Iwan*, 17 App. D. C. 566, and *Re Welch*, 28 App. D. C. 362.)

No. 901. Patent Appeal. Submitted January 20, 1914. Decided February 2, 1914.

HEARING on an appeal from a decision of the Commissioner of Patents rejecting an application for a patent. *Affirmed.*

The COURT in the opinion stated the facts as follows:

This is an appeal from a decision of the Commissioner of Patents rejecting an application for patent having the following claim:

"An appliance for supplying oxygen and air to divers and others, comprising a plurality of gas cylinders, a hollow connection between the said cylinders, a curved neck integral with said connection adapted to lie adjacent to one side of the body of the user of the apparatus, and means at the outer end of said curved neck adapted to control the supply of gas to the said user of the apparatus."

The claim is for an improvement in appliances for supplying oxygen air to divers, miners, and others for use in irrespirable atmospheres, which comprises a pair of gas cylinders in connection with a breathing apparatus. The specifications and accompanying drawings show two cylinders, carried on the back

of the wearer, containing oxygen, or a mixture of oxygen and
air in a state of heavy compression. The cylinders open into
a common pipe, fitted with a controlling valve and a reducing
valve, from which the oxygen passes to the breathing appliance
at the desired pressure. The pipe has a connection fitted with
valve and pressure gauge on a flexible tube to indicate the pres-
sure in the cylinders. Upon opening the controller valve the
compressed oxygen will flow through the reducing valve to the
breathing apparatus. Should the reducing valve become clogged
the wearer may open another valve and procure a supply of
oxygen by a by-pass provided for the purpose. The patentable
novelty relied on consists in the curved neck integral with the
cylinder connection adapted to lie adjacent to one side of the
body of the user of the apparatus, which enables him to see
and readily control the valves with one or both hands. It was
contended by the applicants that "in various types of breathing
appliances in use, the valves are out of sight and almost out of
reach of the wearer, and in consequence are exceedingly awk-
ward to control, and there is always the greatest risk that the
man may turn on or off the wrong valve. By curving the neck,
however, this difficulty is obviated; the valves are brought for-
ward within easy reach of the wearer, and he can actually see
his valves and control them without the slightest risk."

This contention was considered by the tribunals of the Office;
and there was filed an affidavit showing that the applicant's
appliance had been sold to a considerable number of mining
companies in this country. The references upon which the
claim was rejected are: Garforth patent, December 29, 1908;
Jaubert patent, March 9, 1909; Davis, British patent, Decem-
ber 14, 1906, and Suess, French patent, September 7, 1904.

These references are fairly described in the statement of the
Primary Examiner as follows:

"The patent to Jaubert shows an appliance supplying respira-
ble gas mixtures, such as oxygen and air, comprising a plurality
of gas cylinders having hollow connections between said cylin-
ders, and having a pipe or neck communication with said con-

nections and with means at the outer end of said pipe or neck adapted to control the supply of gas to the user of the apparatus.

"Applicants have made the pipe or neck on their apparatus curved and of greater length than is shown by Jaubert. The extra length is nothing more than a difference of degree, and the curving of the neck amounts to nothing more than a difference in design, the purpose of which is for a more convenient use. Neither one of the above variations is deemed patentable over Jaubert.

"Applicants further set forth the point that the pipe C, as illustrated, is made integral with the connection between the cylinders. This, also, is considered unpatentable. Making the parts shown in Jaubert integral would not in the least change the operation and the ultimate result of the device. Jaubert's apparatus functions exactly as applicants' device functions.

"The French patent to Suess, however, shows an integral neck with the connection between the cylinders, (See Figure 4,) and—Figure 1 of said patent the neck is of great length and is also curved, therefore covering all the features of applicant's device as far as the structure claimed is concerned.

"Furthermore, in order to show the idea of curving a part of an apparatus, similar in nature to applicants' device, so as to fit the contour side of a person's body, the patent to Garforth was cited, in which is shown a pipe 11 curved in the same way for the same purpose as applicants have done with the neck C in their apparatus.

"This patent also shows the operating valve at the front of the person, thereby meeting applicants' contention set forth in their letter of May 18, 1911, quoted in part as follows:

" 'In various types of breathing appliances in use, the valves are entirely out of sight and almost out of reach of the wearer, and in consequence are exceedingly awkward to control, and there is always the greatest risk that the man may turn on or off the wrong valve. By curving the neck, however, this difficulty is obviated; the valves are brought forward within easy

reach of the wearer, and he can actually see his valves and control them without the slightest risk.'

"The British patent to Davis stands in the same position as Jaubert's patent, with the added element of a flexible gauge tube and a gauge to be used in the same manner as applicants' gauge tube is utilized."

The Examiners in Chief adopted this view in a brief statement.

On final appeal the Commissioner said:

"The appealed claim covers the arrangement of the elements of a breathing apparatus, including oxygen tanks, etc., in such a form as to be convenient to the wearer. The claim distinguishes from the apparatus illustrated in the patent to Jaubert only in specifying that the 'neck,' shown at C on applicants' drawing and at X in Jaubert, is integral with the connection between the cylinders and is curved.

"The purpose of the curve is to make the pipe fit more closely to the body of the wearer in a convenient way, and to bring the control valve in a convenient position.

"There is clearly nothing patentable in making the so-called 'neck' integral rather than separable, and such a connection is shown in the French patent to Suess.

"I agree with the holding of the tribunals below that the mere shaping of the connections to a convenient form, or to such form as to enable the tank to be worn upon a particular portion of the body, does not amount to invention. There is no new or unexpected function flowing from the particular arrangement specified in the claim. It is regarded merely as a matter of design or choice, and, assuming its superiority, is considered to be the result of good judgment rather than invention."

*Mr. G. A. Prevost* and *Mr. L. P. Whitaker* for the appellant.

*Mr. Webster S. Ruckman* for the Commissioner of Patents.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

The conclusions of the Patent Office tribunals, we think, are sound. Among the authorities cited in their support in the brief for the Commissioner, see *Smith* v. *Nichols,* 21 Wall. 112, 119, 22 L. ed. 566, 567; *Howard* v. *Detroit Stove Works,* 150 U. S. 164, 170, 37 L. ed. 1039, 1041, 14 Sup. Ct. Rep. 68; *Re Ivan,* 17 App. D. C. 566, 571; *Re Welch,* 28 App. D. C. 362, 364.

Being fully satisfied with the decisions quoted, it is unnecessary to further discuss the question.

The decision is affirmed. The clerk will certify this decision to the Commissioner of Patents as the law requires.

*Affirmed.*