## PYLE NAT. CO. et al. v. LEWIN.
### No. 6070.

Circuit Court of Appeals, Seventh Circuit.
Sept. 15, 1937.

Rehearing Denied Oct. 13, 1937.

Charles F. Murray, of Chicago, Ill. (Charles P. Schwartz and Donald R. Murray, both of Chicago, Ill., of counsel), for appellants.

C. Paul Parker and Lincoln B. Smith, both of Chicago, Ill., for appellee.

Before EVANS and MAJOR, Circuit Judges, and LINDLEY, District Judge.

MAJOR, Circuit Judge.

This is an appeal from a decree holding valid and infringed patents No. 1,777,120 issued September 30, 1930, and No. 1,800,839 issued April 14, 1931, both to appellee. The decree orders an accounting of the profits and damages and treble damages as to the appellant, A. S. Schulman Electric Company. In the first patent, claim 6 is relied upon and in the second, claims 2, 3, 8, 9, 10, and 11. Claim 6 is as follows: "An adapter for oval duct comprising a cylindrical body portion having threads on one end and a reduced curved extension on the other end, an offset on the free end of the said extension providing a shoulder therein, a clamping member associated with said offset for embracing an oval duct and means associated with said offset and clamping members for securing the duct therein."

In view of the record as presented, it is not necessary to set forth the claims of the second patent. It is sufficient to state that they specifically provide "an adapter for oval ducts." In the first patent the word "oval duct" appears in the singular, while in the second patent it appears in the plural, and this is the essential difference as we understand it.

The defendants below were George Richardson and Continental Illinois National Bank & Trust Company of Chicago, trustees for Marshall Field estate, the Pyle National Company, a corporation, A. S. Schulman Electric Company, a corporation, and National Electric Products Corporation, a corporation. The cause as to the first named defendant was dismissed, and a decree was entered against the other defendants. No appeal was taken as to the last named defendant. As will be noted, the first patent describes and claims "an adapter for oval duct" to be used where it is necessary to feed electric wires around corners in the walls of a building and is referred to as a "single elbow," while the device in the second patent is designed to perform the same function except it is intended to feed the wires from a single round pipe to two oval ducts and is referred to as a "twin elbow." Appellee did business under the name of Lew Fittings Company, and the devices in question are known to the trade as "Lew Fittings or Lew Elbows."

In modern buildings the electric wires are carried up to the room, where they are to be used, to what is known as the wall box in round iron pipes within the vertical walls, and these pipes are usually imbedded in concrete. A section of the iron pipe called a "riser" extends from the wall box within the wall of the room to a point near the ceiling. From this point the wires must be carried along the ceiling to a point where the light fixtures are to be placed. For this ceiling extension a solid flattened pipe is used called oval duct, which is to be distinguished from "metal molding," which consists of two pieces and in which the wires are laid before the pieces are connected. The round pipe from the basement to the wall box is installed when the building is erected, but the riser and oval duct are not installed until it is determined where the fixtures in the room are to be placed. It is necessary to draw the wires from the wall box through the riser and oval duct, and this operation is called "fishing" the wires. It is important, therefore, to have connection between the round riser and the horizontal flattened oval duct which not only will completely enclose the wires but will permit and facilitate the fishing of the wires. This connection is the elbow of the patents in suit.

It is a requirement of the Board of Underwriters and of the ordinances of most cities that electric wires be wholly enclosed and not exposed at any place within the building. Another legal requirement is that the raceway in which the electric wires are enclosed be grounded, and that there be a sure and adequate electrical contact between all parts of the raceway, from every room and every fixture in the building down to the ground. It is also important from an æsthetic standpoint that all wires and enclosures of the same be not exposed. It is essential, therefore, that this elbow conceal the wires, afford sure and safe electrical bonding at all points, that it be capable of concealment either by concrete or by plaster, and that it provide a smooth raceway through which the wires may be fished

630

quickly and without damage to the insulation.

Appellants urge the invalidity of the patents in suit as anticipated by the prior state of the art and rely chiefly upon the Schwedler patent, No. 1,066,329. That patent, however, as we understand it, makes no reference to a coupling between round pipe and oval duct. It is true it made provision for the connection of two round pipes as it had threads at both ends. However, as it was important to have the wires in the ceiling contained in oval duct rather than round pipe so that the same might be plastered over and thereby concealed, this device did not meet the requirements or demands of the trade. This is evidenced by the fact that it never came into general use and that the industry was continually looking for a device that would better meet its requirements. On the other hand, the single elbow made by appellee was practically universally adopted by the trade. As evidence of this statement, it may be noted that the sales of the single elbow from the time of its introduction near the end of 1928 and the almost complete collapse of the building program less than two years later amounted to a quarter of a million. The sales were general all over the United States, and the device in question was used by all of the larger electrical companies and required by architects.

Another device relied upon by appellants as bearing upon the prior art is what is referred to in the record as Exhibit 17 which apparently was assembled for the purpose of the suit, as it consists of an assembly of parts procured from separate manufacturers. There can be no doubt that the device of patent in suit had many advantages and was a great improvement over such an assembled device. A thoroughly qualified witness pointed out that such an elbow could not be set in concrete as the concrete would run into the elbow, oftentimes necessitating its removal in order to remove the plaster or concrete. It was also difficult to fish the wires through the elbow and also to make the essential electrical bonding. The alacrity with which the appellants and the trade generally adopted appellee's device furnishes support for the proposition not only of its utility, but that it was novel and was a great improvement over any device theretofore used by the building trade.

Appellants also advance the proposition that the mere casting together of two or more parts, which previously had been cast separately, does not constitute invention, and a number of cases are cited in support of this contention, chief of which is Howard v. Detroit Stove Works, 150 U.S. 164, 14 S.Ct. 68, 37 L.Ed. 1039. This proposition, however, must be limited to cases where by such a change no new or different result is attained. The language of the court in Krementz v. S. Cottle Co., 148 U.S. 556, 13 S.Ct. 719, 37 L.Ed. 558, which had to do with a collar button made in one part which formerly had been made in three parts, is quite applicable to the situation here presented. On page 560 of 148 U.S., page 720 of 13 S.Ct., 37 L.Ed. 558, it is said:

"In the present instance, however, we find a new and useful article, with obvious advantages over previous structures of the kind. A button formed from a single sheet of metal, free from sutures, of a convenient shape, and uniting strength with lightness, would seem to come fairly within the meaning of the patent laws. * * *

"It was also made to appear that the advantages of the new button were at once recognized by the trade and by the public, and that very large quantities have been sold."

It is also insisted that the idea involved in appellee's device is so simple and obvious it does not constitute invention. True, it now has that appearance. The fact, however, that this improvement was long overlooked, using devices far less satisfactory, cannot be ignored. As was said in Expanded Metal Company v. Bradford, 214 U.S. 366, on page 381, 29 S.Ct. 652, 656, 53 L.Ed. 1034: "It may be safely said that if those skilled in the mechanical arts are working in a given field, and have failed, after repeated efforts, to discover a certain new and useful improvement, that he who first makes the discovery has done more than make the obvious improvement which would suggest itself to a mechanic skilled in the art, and is entitled to protection as an inventor."

Again the court in Carnegie Steel Company v. Cambria Iron Company, 185 U.S. 403, on page 446, 22 S.Ct. 698, 715, 46 L.Ed. 968: "But it is plain from the evidence, and from the very fact that it was not

sooner adopted and used, that it did not, for years, occur in this light to even the most skillful persons. It may have been under their very eyes; they may almost be said to have stumbled over it; but they certainly failed to see it, to estimate its value, and to bring it into notice. * * * Now that it has succeeded, it may seem very plain to anyone that he could have done it as well. This is often the case with inventions of the greatest merit."

■ The second patent is claimed to be void for double patenting, although no authorities are cited in support of this contention. It is said that claims No. 5, 6, and 7 of the second patent cover identically the same subject matter as claim 6 of the first patent. Inasmuch as these claims are not sued on and, therefore, not involved in the suit, we do not see the materiality of such contention. Appellants admit that the first patent cannot be cited against the second. Inasmuch as we hold the prior art does not anticipate the first patent, it follows it does not anticipate the second. It must be remembered that the applications for the patent in question were pending at the same time, and we are unable to ascertain from the record which device was first claimed as an invention. It is true the claims of the second patent are quite similar to claim 6 of the first patent, the essential difference being that in the latter a plurality of outlets are specifically provided, while under claim 6 of the first patent no such specific claim is made. Undoubtedly, the claims contained in the second patent might well have been claimed in the first. It does not follow from this, however, that the second patent is invalid. The language used by the court in Potts & Co. v. Creager, 155 U.S. 597, on page 605, 15 S.Ct. 194, 39 L.Ed. 275, seems to support this statement.

The second patent is also attacked for lack of utility. We find in the record evidence to support the finding of the District Court in this respect. It is true only a small quantity of the twin elbows were sold as compared with the sales of the single elbow, but this is explained from the fact that the twin elbow was not made available until shortly before the building program ceased or practically so. It is worthy of note that in the Field building, which seems to have been the first large building erected in the city of Chicago after the depression, the twin elbow device was specified by the architect to be installed in this building.

■ We also conclude appellants have infringed. An inspection of the devices complained of shows them to be an almost exact duplicate of the devices described in appellee's patents and manufactured by him. It is contended that no infringement is shown after notice as is required by statute. It is admitted by appellee that the word "patent" was not stamped upon the elbows in question, but it is claimed that appellants had actual notice. The District Court found they had such notice, and there is evidence to sustain such finding. It is true the testimony regarding notice was disputed, but this involves the credibility of certain witnesses and the weight to be attached to their testimony. We find no occasion to disturb the finding of the District Court in this respect. Complaint is also made of the inclusion in the record of testimony concerning the purchase and use by the National Electric Products Corporation of a large quantity of appellee's devices. Notwithstanding the fact that this company has not appealed, we are of the opinion such testimony is properly in the record. Its relevancy bears on the question of utility as well as invention. Temco Electric Motor Co. v. Apco Manufacturing Company, 275 U.S. 319, 48 S.Ct. 170, 72 L.Ed. 298; Wahl Clipper Corporation v. Andis Clipper Company (C.C.A.) 66 F.(2d) 162.

■ Whether the court was justified in awarding treble damages as to the Schulman Electric Company prior to an accounting of damages and profits to be stated by a master presents a question not free from doubt. While we are unable to find any case where the question has been directly passed upon, yet it seems to be the universal practice for the District Court to make such determination only after the amount and character of the damages have been stated. A reading of section 70, title 35, U.S.C.A., indicates this to be the proper procedure. It will be noted the section authorizes the court to grant injunctions, direct an accounting of profits by the defendant, and assess damages which the complainant has sustained. This may be done, of course, by reference to a master. Afterwards in the same section is found the authority to increase such damages. We are of the opinion that such

**632**

increase should not be allowed until after an accounting has been had. This evidently is what this Court had in mind in Pollock v. Martin Gauge Co., 261 F. 201, on page 202, where it is said: "But whether damages in excess of the compensatory damages shall be awarded, as well as the amount thereof, must be determined by the District Court upon the accounting."

We conclude that the patents in suit are valid, that they have been infringed by each of the appellants, and that the cause was properly referred to a master to take and state an account of damages and profits. In these respects the decree is affirmed. That part of the decree which awards treble damages is reversed solely on the ground that such question should be determined in connection with the accounting and not before. Costs of this appeal to be shared equally by the parties.