BONNELL et al. v. STOLL et al.

(Circuit Court of Appeals, Third Circuit. March 22, 1894.)

No. 19.

1. PATENTS—INVENTION—SPRING BED BOTTOMS.
> There is no invention in substituting a single hinge wire, passing through adjacent coils of two sections of a folding wire bed bottom, for two or more hinge wires which previously served the same purpose; such change is an improvement in degree only. 57 Fed. 396, affirmed.

2. SAME.
> The Bonnell & Lambing patent, No. 405,821, for improvements in bed bottoms, is void, as to the second claim, for want of invention. 57 Fed. 396, affirmed.

Appeal from the Circuit Court of the United States for the District of New Jersey.

This was a suit by Elliott M. Bonnell and John S. Lambing against Robert P. Stoll and others for infringement of a patent for improvements in bed bottoms. The circuit court dismissed the bill (57 Fed. 396). Complainants appealed.

Albert B. Osborne, for appellants.

Francis C. Lowthrop, for appellees.

Before DALLAS, Circuit Judge, and WALES and GREEN, District Judges.

WALES, District Judge. The appellants were complainants below, and brought suit for the infringement of letters patent No. 405,821, for improvements in bed bottoms, issued to them on June 25, 1889. Their bill was dismissed by the circuit court on the ground of anticipation and want of patentability. The specifications describe a bed bottom constructed of parallel rows of helical springs, united to each other by a spiral or coiled wire, passing through, and connecting the adjacent portions of the upper whirls of the springs, while a similar spiral or coiled wire connects the bottom whirls of the springs. The bed bottom is made in two sections or halves, and the spiral or coiled wire which connects the tops of the adjacent rows of springs serves as a hinge, the bottom wire being omitted at the point where the two sections separate, thus allowing them to fold the one upon the other. There are two claims. The second claim only is alleged to be infringed, and reads as follows:

"2. A spring bed bottom formed in sections, and having the top whirls of springs at the adjacent ends of the sections united by a spiral wire wound loosely around them, so as to allow the sections to fold, and yet afford a yielding connection, substantially as specified."

The connecting spiral or coiled wire, mentioned in the second claim, also serves other purposes in the construction of the complainants' bed bottom, but the chief and only function attributed to it in this claim is its action as a hinge between the two sections, so that one can fold upon the other. Confining the consideration of patentability to this one feature, namely, the action or use of the coiled wire as a hinge, and in view of the prior state of the art, as proved by the

evidence and the defendants' exhibits, it is very clear that the second claim cannot be sustained. A number of exhibits were produced on the part of the defendants to show that the complainants' invention had been anticipated. It will be sufficient to refer to two of these,— the "Maier Bed" and the "Lace Web Spring," each of which antedated the patent in dispute. These exhibits show folding bed bottoms made in two sections, constructed entirely of spiral springs, united by coiled wire, the two sections being held together by a spiral or coiled wire, which performs the three functions of the spiral wire hinge of the complainants' device, namely, "loosely and yieldingly connecting the springs," furnishing "a spiral filling for the interspaces" between the four adjacent springs, and "serving as a hinge," folding the sections. In the Maier bed, as in the complainants' device, the connection between the two bed sections is effected by a spiral connection of wire, yieldingly joining the springs, and permitting the two sections to fold the one upon the other, and presenting a spiral filling for the interspaces along the connecting line between the sections. In the lace web spring, if a single spiral hinge wire were employed instead of the number of hinge wires shown in the exhibit, the same thing would be produced which is pointed out in claim 2 of complainants' patent. The effect of such a change would be to make one wire do the work of several, and this is the distinctive feature which is relied upon to support the claim. Admitting that it was novel to use one wire, instead of two or more, for a hinge, and that in consequence the patented articles were more rapidly made, and sold at a cheaper price than before, and thereby became more useful, it does not appear that originality of invention or discovery was required or exercised in making the change from several wires to one. The cheaper article is not always the better one. The substitution of one material for another, or the reduction or increase in size or weight, is not proof of invention. Such changes result from observation and experience, and most frequently are only the carrying forward of the plans and suggestions which have been already made by others. It is not enough that a thing shall be new, in the sense that in the shape or form in which it is produced it shall not have been before known, and that it shall be useful, but it must amount to an invention or discovery. Thompson v. Boisselier, 114 U. S. 11, 5 Sup. Ct. 1042. This doctrine has been frequently recognized and applied. Estey v. Burdett, 109 U. S. 633, 3 Sup. Ct. 531; Pennsylvania R. Co. v. Locomotive Engine Safety Truck Co., 110 U. S. 490, 4 Sup. Ct. 220; Hollister v. Manufacturing Co., 113 U. S. 59, 5 Sup. Ct. 717; Burt v. Evory, 133 U. S. 349, 10 Sup. Ct. 394; French v. Carter, 137 U. S. 239, 11 Sup. Ct. 90. The complainants' second claim contains, at the best, an improvement in degree only of what had preceded it in the same field, and is wanting in the element of invention which would entitle it to a patent. The decree of the circuit court is affirmed.