BERNZ v. SCHAEFER et al.

(District Court, D. New Jersey. May 6, 1913.)

1. PATENTS (§ 311*)—CONSTRUCTION OF CLAIMS.

Where the claim of a patent on which a suit is based omits a feature which is contained in other claims not in suit, it cannot be construed as covering such feature, but it must be presumed that it was intentionally differentiated.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 541, 542; Dec. Dig. § 311.*]

2. PATENTS (§ 26*)—INVENTION—MULTIPLICATION OF PARTS.

There is no invention in making in one part what was formerly made in two, or in two parts what was made in one, when by such change no different result is attained.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 27–30; Dec. Dig. § 26.*]

3. PATENTS (§ 16*)—INVENTION.

Cheapening the cost of an article by simplifying its construction does not constitute patentable invention.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 14, 15; Dec. Dig. § 16.*]

4. PATENTS (§ 328*)—VALIDITY—AIR PUMP FOR BLOW-TORCHES.

The Bernz patent, No. 937,757, for an air pump for blow-torches, claim 2, is void for lack of patentable novelty and invention in view of the prior art.

In Equity. Suit by Otto Bernz against Frederick J. Schaefer and Emil Beyer. On final hearing. Decree for defendants.

Russell M. Everett, of Newark, N. J., and Leo J. Matty, of New York City, for complainant.

George D. Richards, of Newark, N. J., for defendants.

CROSS, District Judge. The bill of complaint as originally filed was based upon two patents, both issued to the complainant, one No. 937,757 on October 26, 1909, the other No. 955,313 on April 19, 1910. Both of them related to improvements in air pumps for blow-torches. Subsequently, by stipulation of counsel, patent No. 955,313 was withdrawn from consideration, and the cause came to final hearing as if the bill, answer, replication, and proofs related to patent No. 937,757 only.

The objects of the invention as stated in the specification are as follows:

"The objects of the invention are to secure improved means for obtaining the necessary air pressure in the body of the torch; to secure a construction of pump which shall not leak, and in which the plunger is always out of the way; to secure a safe and practical pump for ordinary usage; to obtain a simple and inexpensive construction throughout, and to obtain other advantages and results as may be brought out in the following description."

The patent contains four claims, of which the second only is relied upon. It reads as follows:

"2. The combination of a cylinder having discharge means at one end and at its opposite end an interiorly threaded aperture, a piston in said cylinder

having a rod extending slidably through said aperture, a handle on the outer end of said piston rod, and a sleeve around the piston rod exteriorly threaded to screw into the said threaded aperture of the cylinder head; said sleeve being fast to said handle."

The defendants have assailed the validity of the patent for various reasons, but admit that if the claim in issue is valid they have infringed it. The claim is simple and pertains to a means for locking in a downward position the piston rod of an air pump, thereby closing a needle valve on the lower end of the piston rod, and preventing the escape of the compressed air, which, were it allowed to escape, would force the piston rod and handle upwards to such an extent that they would interfere with the operation of the torch. It is admitted in behalf of the complainant that various devices were in use, prior to that of the patent, for accomplishing the purpose stated, and that several of them were used by the complainant before he obtained his present patent. The only locking device in the art, however, with which we need concern ourselves, consists of a screw attachment which will be referred to later. Complainant's counsel admits that the claim in controversy to be sustained must be narrowly construed. The prior art shows the screw thread of the locking device in various positions on the piston rod, and it is admitted in substance, as indeed it must be, that the only difference between the device of the patent in suit, for locking the piston and plunger of the air pump, and some of those found in the prior art, is that in the patent in suit the location of the screw thread has been changed from the piston rod itself, where it was found in the earlier patents, to a sleeve enveloping that rod, which sleeve is, however, rigidly attached thereto.

The defendant has introduced in evidence several prior patents, but it is unnecessary to refer specially to more than No. 489,513 issued to one Walsh in 1893, for a plumber's torch, which, in the language of the specification, relates to a combined air-pump and shut-off attachment. The defendant's expert claims that this patent is a complete anticipation of the patent in suit, so far as the invention is defined and embraced in the claim in issue. A careful examination of the two constructions shows that the only difference between them worthy of mention is that in the patent in suit the handle has a sleeve integral with it, which is rigidly attached to and surrounds and enlarges the piston rod at its upper end, on which sleeve the screw thread is cut; while in the Walsh patent, the handle and hollow piston rod form one piece, the upper end of the piston rod being somewhat enlarged, and the screw thread cut directly on such enlarged portion. In other words, the claim in question calls for the handle with its integral sleeve and the piston rod to be constructed in two parts but fastened together, while the Walsh patent has them constructed integrally. That this is the only distinction between the two is practically admitted by the complainant's expert in the following language:

"While both constructions may serve to hold the piston rod in locked position, and both serve to afford a means for operating the piston rod, and both serve to guide the piston rod, that is not what Mr. Bernz has claimed in claim 2 of the patent in suit; but, on the contrary, he has distinctly and unqualifiedly pointed out that the feature of his claim is in making the handle and sleeve separate from the piston rod."

And being asked why he considered the two-piece construction superior to the single piece, answered by saying in substance that they could be made cheaper and quicker in two parts than in one.

In my opinion, the two forms of construction are equivalent; that the screw thread in the one is cut directly on the enlarged portion of the piston rod, while on the other it is cut on the sleeve surrounding and also enlarging the piston rod, in no wise alters its function. The complainant has not pointed out any changed or additional function performed by a construction following the claim in suit over that of the Walsh patent. Moreover, this is evidently the conclusion of the complainant's expert who. as appears by the extracts from his testimony above given, after admitting that they both perform certain functions which he names, says the *feature* of the claim in controversy is in making the handle and sleeve separate from the piston rod, and it is in this respect only that he differentiates it from Walsh. Merit has been claimed for a construction following the claim in suit, in which the sleeve as manufactured by the complainant is made of brass, in which metal the screw thread can be more readily and possibly more cheaply cut than in the iron piston rod; but there is nothing of this character suggested, nor is anything said about metals, either in the claim or in the specification. Indeed, it is nowhere even intimated that the sleeve would be better or cheaper if made of brass.

[1] Mention was also made at the argument of the fact that the sleeve may, as suggested in the specification, be made rotably loose on the piston rod. That feature, however, is not claimed by the claim in suit, although it is by claims 3, 4. and 5; it is consequently excluded from consideration in this connection. That is to say, claim 2 cannot. under the circumstances, be construed to be applicable to a sleeve or handle rotably loose on the piston rod, but must be confined to a sleeve or handle rigidly attached to the piston rod, both of which forms of construction are suggested in the specification. Moreover, all of the exhibits in the case show the sleeve rigidly attached to the piston rod.

The principle to be followed in the construction of claims under the circumstances just mentioned may be found laid down in Mast, Foos & Co. v. Dempster Mill Mfg. Co., 82 Fed. 327, at page 333, 27 C. C. A. 191, at page 197, where the following passage appears:

"In our opinion, the special office of the second and third claims was to secure combinations containing the pivoted pitman and the pitman-rod described in the specification and omitted from the first claim, and the fact that these claims were added is a very persuasive argument that the additional elements they protect were not secured by the first claim. Any construction which would read into the first claim these additional elements renders it useless and unmeaning, because it gives it the same effect as the claims which follow it, and in this way shows that neither the patentee nor the Patent Office contemplated such an interpretation."

Again. in Eppler v. Campbell, 86 Fed. 141, 29 C. C. A. 616, we find the following:

"It is consequently necessary, * * * where * * * the complainant limited its suit to one claim out of the many in the patent, to make sure that the claim in issue does not receive improper color or breadth from those not in issue."

And in National Cash-Register Co. v. American Cash-Register Co., 53 Fed. 367, at page 370, 3 C. C. A. 559, at page 562, Judge Dallas, speaking for the Third Circuit Court of Appeals, says:

"There is nothing upon this record which would warrant us in attributing to the patentee the folly of having presented, and to the Patent Office the improvidence of having allowed, two claims for the same thing. The distinction between them must be maintained, that both may be given effect."

It follows, from the foregoing authorities, that we have nothing to do in this case with the element of a sleeve "rotably loose on the piston rod," or with the question whether such claims are, or are not, valid.

Considerable stress was also laid by complainant's counsel upon the fact that the claim in suit represents the piston rod as extending "slidingly" through the "integrally threated aperture"; but the first of the foregoing extracts from the testimony of complainant's expert shows that both constructions "serve to guide the piston rod," and that is obviously what is meant, and all that is meant, by the term "slidingly." The piston rod passes through and is guided by said aperture; but whether it can properly be said to pass through it "slidingly" in the case of either patent is a question; but, if it can be in one case, it certainly can in the other, and that without other than mechanical change.

[2] Apparently, the only advantage which the patentee claims for the construction of the patent in suit is that it affords, as he states in his specification, and as his expert, in the absence however of any explicit testimony, has attempted to show, "a simple and inexpensive construction throughout." That may be so; but, without evidence other than that of an expert, it is somewhat difficult to see how a handle and piston rod composed of two pieces rigidly fastened together are simpler or less expensive in construction than a handle and piston rod in one piece. But if the complainant's contention in that respect were adopted, still patentability would not thereby be disclosed.

"There is no invention in making two parts of one thing, or one part of two, when by such change no different result is attained." D'Arcy v. Staples & Hanford Co., 161 Fed. 733, 88 C. C. A. 606.

Again, in H. Mueller Mfg. Co. v. A. Y. McDonaly & Morrison Mfg. Co. (C. C.) 164 Fed. 991, it was said:

"Furthermore, the making in one piece of that which is in two, or in two pieces that which is in one, when the function of the device is not changed, is not invention, but the work of the mechanic only."

See, also, Standard Caster & Wheel Co. v. Caster Socket Co., 113 Fed. 162, 51 C. C. A. 109; Howard v. Detroit Stove Works, 150 U. S. 164, 169, 170, 14 Sup. Ct. 68, 37 L. Ed. 1039; Bullock Electric Mfg. Co. v. General Electric Co., 149 Fed. 409, 421, 79 C. C. A. 229.

[3] So too, if the making of the handle and sleeve in one piece, and the piston rod in another, and then uniting them, is cheaper than to construct the handle and piston rod in one piece, that of itself would

not sustain the patent. The Supreme Court says, in Reckendorfer v. Faber, 92 U. S. 347, 357, 23 L. Ed. 719:

"Perfection of workmanship, however much it may increase the convenience, extend the use, or diminish expense, is not patentable."

In Bonnell et al. v. Stoll et al., 61 Fed. 767, 10 C. C. A. 48, the Circuit Court of Appeals of this circuit, speaking of a spiral hinge wire which fastened together different sections of a spring bed, says:

"In the lace web spring, if a single spiral hinge wire were employed, instead of the number of hinge wires shown in the exhibit, the same thing would be produced which is pointed out in claim 2 of complainant's patent. The effect of such a change would be to make one wire do the work of several, and this is the distinctive feature which is relied upon to support the claim. Admitting that it was novel to use one wire, instead of two or more, for a hinge, and that in consequence the patented articles were more rapidly made and sold at a cheaper price than before, and thereby became more useful, it does not appear that originality of invention or discovery was required or exercised in making the change from several wires to one. The cheaper article is not always the better one. The substitution of one material for another, or the reduction or increase in size or weight, is not proof of invention. Such changes result from observation and experience, and most frequently are only the carrying forward of the plans and suggestions which have been already made by others."

[4] There are other devices in the prior art which are claimed to anticipate and defeat the patent in suit, but it is unnecessary to refer to them. In view of what Walsh had done, not to mention what others had done, including Bernz, in a prior patent, it is impossible to discover anything of patentable novelty in claim 2 of the Bernz patent. Such differences as have been made to appear between it and Walsh are inconsequential, in that they perform no additional or different function and are altogether lacking in novelty and invention. Any mechanic with ordinary skill would have made the changes in question without difficulty, if any reason or necessity therefor existed. Several other defenses which have been interposed need not be considered.

Claim No. 2, the only one in issue, is invalid. A decree will therefore be entered dismissing the bill, with costs.