## BERNZ v. SCHAEFER et al.

(Circuit Court of Appeals, Third Circuit. March 30, 1914.)

No. 1831.

PATENTS (§ 328*)—VALIDITY—BLOW TORCHES—AIR PUMP.

 The Bernz patent, No. 937,757, claim 2, for an air pump for blow torches, *held* void for lack of patentable novelty and invention, in view of the prior art.

Appeal from the District Court of the United States for the District of New Jersey; Joseph Cross, Judge.

Suit in equity by Otto Bernz against Frederick J. Schaefer and another for patent infringement. Decree for defendants (205 Fed. 49), and complainant appeals. Affirmed.

Russell M. Everett, of Newark, N. J. (Leo J. Matty, of New York City, of counsel), for appellant.

George D. Richards, of New York City, for appellees.

Before GRAY, BUFFINGTON, and McPHERSON, Circuit Judges.

GRAY, Circuit Judge. A bill of complaint was filed by the appellant in the court below, to restrain an alleged infringement on patent No. 937,757, for air pumps in blow torches, and another, No. 955,313, for an improvement on the same, which was afterwards withdrawn from the consideration of the court. The cause came on for final hearing, on the bill, answer, replication and proofs, as to patent No. 937,757 alone. It was admitted that if the patent was valid, defendants had infringed it. The specifications of the patent state the subject-matter of the invention as follows:

"The objects of the invention are to secure improved means for obtaining the necessary air pressure in the body of the torch; to secure a construction of pump which shall not leak and in which the plunger is always out of the way; to secure a safe and practical pump for ordinary usage; to obtain a simple and inexpensive construction throughout, and to obtain other advantages and results as may be brought out in the following description."

Of the four claims of the patent, the second is the only one relied upon. It is as follows:

"2. The combination of a cylinder having discharge means at one end and at its opposite end an interiorly threaded aperture, a piston in said cylinder having a rod extending slidably through said aperture, a handle on the outer end of said piston rod, and a sleeve around the piston rod exteriorly threaded to screw into the said threaded aperture of the cylinder head, said sleeve being fast to said handle."

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The defenses urged in the court below and here are invalidity of the patent, by reason of anticipation and want of patentable invention in view of the state of the art.

It appears from the evidence that from the beginning of the use of the modern plumber's torch, trouble and annoyance arose to the user from the raising of the plunger and its handle after the pumping operation had ceased. This lifting of the piston and plunger was occasioned by the leakage of air through the valve at the bottom of the cylinder. The need of some device by which the lower conical end of the plunger rod might be held down in its receiving cap, thus closing the air valve at the bottom of the cylinder and at the same time preventing the troublesome rising of the plunger rod through the aperture at the upper end of the cylinder, was obvious. It is apparent from the most casual observation of the drawings of the patent in suit and of those accompanying prior patents and devices for air pumps of different kinds, that the plunger rod must have some sort of handle at its topmost end and must pass through an aperture in the cap covering of the top of the cylinder. It is also apparent that this aperture must fit the plunger loosely enough to permit it to freely reciprocate in an up and down motion through it, but tightly enough to prevent any appreciable wabbling of the plunger from side to side, while being operated. In other words, the aperture in the center of the cap of the cylinder must be of such size as to serve as a guide to the plunger when moving axially to the cylinder and at the same time inclose it closely enough to prevent the wabbling of which we have spoken.

This was a simple and basic feature in the construction of all such pumps. When the desirability of securing the lower end of the plunger down on the valve seat at the lower end of the cylinder and the upper or handle end of the plunger down upon the cap of the cylinder, for the reasons above stated, was recognized, it would seem that only ordinary mechanical skill was necessary to devise a way in which the thing desired could be accomplished. Though something on the principle of the bayonet lock had been used for this purpose on cylinders containing a reciprocating piston rod, some sort of screw on the upper end or attached to the upper end of the rod engaging with the aperture through the cap of the cylinder, seems to have been the device that most readily occurred to those who sought to hold the piston rod in its downward position. Devices of this kind in fire extinguishers, pumps for inflating tires, and air pumps generally, are shown in the drawings of prior patents exhibited in the record. It is obvious that, if the circumference of the piston rod is the same from top to bottom, a thread cut on the top of a rod would not engage with a corresponding thread cut on the inner side of the aperture of the cap, so that a bushing of some kind on the upper end of the piston rod, immediately under the handle, would be necessary to project threads cut thereon, so as to engage with threads in the aperture. Such bushing on the unreduced end of the rod and under the handle would naturally have to be of such thickness as to require some enlargement of the aperture. The complainant, however, by a former patented device, obviated the necessity of enlarging the aperture by upsetting the upper end

of the rod, so as to enlarge its circumference just to the extent that threads cut thereon would engage the corresponding threads on the inside of the aperture without any enlargement thereof. The present patent shows what is possibly an improvement upon this method, by first machining down the upper end of the rod for the required distance, and then placing a sleeve thereon which would be of just such thickness as to engage the threads thereon with the threads on the inside of the aperture. No new thought or invention was involved in this change. The thought was the same and the essential principle and manner of accomplishing the end sought was the same in both patents.

An air pump with a piston rod of uniform circumference from end to end, reciprocating freely through an aperture at the top of the cylinder, was all that was necessary for a successful pumping operation. To fasten said rod in its downward position after the pumping operation had been performed, required only such enlargement of the upper end of the rod as that threads thereon would engage with the threads on the inside of the aperture. The patent in suit accomplished this enlargement of the upper end by the device of a sleeve fitted thereon in the manner described, just as the upsetting of the upper end of the rod in the device of the former patent accomplished the same purpose. That the sleeve must be fastened securely to the handle or to the rod, was obviously necessary for the simple operation described. The claim requires the sleeve to be fastened to the handle. As a matter of fact, it is integral therewith.

It is contended by the complainant, however, with much earnestness, that the word "slidably," in describing the reciprocation of the rod at the top of the cylinder, introduces a new feature essential to the patent in suit, and involving invention. In the first place, it is to be remarked that the word "slidably" in the claim would hardly convey, even to those conversant with the art, the notion that the rod must be in contact at the same time with the threaded interior of the aperture through which it passes at all points in its circumference. Such a fitting of the rod through the aperture would suggest the close contact of a packing box around a valve rod. The evidence of the experts and common knowledge both suggest that such a fitting, if it did not render impracticable the movement of the rod by hand, would nevertheless make such movement unnecessarily difficult. There is every reason from the testimony to think that the word "slidably" conveyed to the ordinary mind skilled in the art, the idea that the piston was to move easily through the aperture, and though it might contact with the interior of the aperture, first on one side, then on the other, it nevertheless would not be restrained from being moved easily up and down by the hand of the operator. Dictionary meanings of the word "slide" or "slidably" do not help us. The word as used in the claim is not explained in the specifications, nor is any function which it describes suggested, except such closeness of the aperture around the rod, as would not interfere with the rod's ready reciprocation through such aperture. It expresses no new or useful function of the device, and, applied in its literal or dictionary sense, would render the recipro-

cation of the rod impracticable for hand operation. If it means anything more than that the rod passes easily through the aperture which incloses it, closely enough to serve as a guide, it was unnecessary, as it presents no new feature in the passing of a rod through an aperture for the purposes required in structures like that of the patent in suit.

Moreover, the evidence shows that in the device of the patents, there is a slight movement or play of the rod from side to side. One structure may show more of such play than another, and there is nothing in the evidence to show that the degree of play of the rod in the aperture is not negligible, as long as the aperture incloses the rod sufficiently closely to furnish a sufficient guide for its reciprocation.

We are not unmindful of the oft-repeated caution necessary in considering the question of patentability, that a method or device which may seem simple after it is disclosed, may nevertheless have required invention for its production, and may be the result of a "happy thought" which entitles the one to whom the thought has occurred, to a patent. On the other hand, we are admonished that nothing tends more to hamper the progress of the mechanical arts, than to attach a monopoly to every improvement or advance therein that might readily, or would inevitably, occur to the skilled mechanic. Such is the character, we think, of the improvement disclosed in the patent in suit. It is a direct development, if not a suggestion, of the prior device of the patentee, where the upset or thickened end of the piston rod was threaded so as to engage the interior thread of the aperture.

We think the learned judge of the court below (Cross, J.) has in his opinion so clearly discussed this patent in the light of the prior art, especially in its relation to the prior patent of Walsh, No. 489,513, which he finds to have anticipated the patent in suit, that it is sufficient to refer to that opinion (205 Fed. 49) and adopt the same as our own. The decree of the court below is therefore affirmed.