ST. LOUIS ELECTRICAL WORKS et al. v. FORE ELECTRICAL MFG. CO. et al.

(District Court, E. D. Missouri, E. D.    September 21, 1920.)

No. 4780.

1. Patents ⊜328—1,239,249, claims 1-4, 8, for rectifier for alternating currents, held infringed.

The Ballman patent, No. 1,239,249, for a rectifier for alternating currents, if valid, is infringed by a device which merely changes the position of two of the elements, and substitutes a closed path for the air gap in the patent in suit.

2. Patents ⊜27(2)—Application of old device to new use not invention.

The mere application of existing devices for the rectification of alternating electrical currents to the production of direct currents for charging storage batteries does not in itself disclose invention.

3. Patents ⊜26(1)—Production of old result by new means is patentable.

The production of an old result by new means constitutes invention, and is patentable.

4. Patents ⊜328—1,239,249, claims 1-4, 8, for rectifier for alternating currents, held valid.

The Ballman patent, No. 1,239,249, claims 1-4, 8, for a rectifier for alternating currents, consisting of a main magnetic path, with means to form a shunt magnetic path, and to set up alternating flux, held to disclose invention, and to be valid.

5. Patents ⊜26(1)—Combination of old elements to eliminate objections involves invention.

A new combination and utilization of similar parts, which had been used in previous devices to produce a similar general result, but so as to avoid waste and danger of destruction of the former devices, is invention.

6. Patents ⊜35—General use of new device tends to show invention.

Though the mere fact that a device has gone into general use does not establish invention, it is a circumstance to be considered, where the question of invention is a doubtful one, and the use of the patented article has become general.

⊜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**7. Patents ⊕=283(1)—Patent for defendant's device no defense against infringement.**

The fact that defendant's device is manufactured under a patent granted by the Patent Office subsequent to plaintiff's patent is no defense to the charge of infringement.

In Equity. Suit by the St. Louis Electrical Works and another against the Fore Electrical Manufacturing Company and another for infringement of patent. Decree rendered for plaintiffs.

John H. Bruninga, of St. Louis, Mo., for plaintiffs.
F. R. Cornwall, of St. Louis, Mo., for defendants.

FARIS, District Judge. This is an action by plaintiffs, who are respectively the exclusive licensee and the patentee, against defendants, for the alleged infringement of the Ballman patent, No. 1,239,249, for a rectifier for alternating currents. Commercially the devices of both plaintiffs and defendants are used to convert alternating electrical currents into direct currents, so that electrical storage batteries may be charged.

The patented device of plaintiff Ballman, so far as this action is concerned, consists essentially of an ordinary horseshoe magnet, having, however, one arm thereof bent at a right angle toward the other arm, not in contact therewith, but having an air gap; to the arm of the horseshoe thus bent, there is attached at the angle of bending the ordinary electromagnet, consisting of a soft iron core about which insulated wire is wound; a vibrating armature made of thin steel, faced with soft iron is attached by a brass, or nonmagnetic, connection to the long, or unbent arm, so as to vibrate in synchronism with the cycles of the electrical current against the end or core of the electromagnet. The simple theory in operation being that a main magnetic path and a shunt magnetic path being thereby produced, the return phase of the alternating current, when passed through the device, is shunted over another path, and the direct current remains and charges the storage battery.

The claims touching this in the Ballman patent, and those alleged to be infringed, are these:

"1. A rectifier for alternating currents, comprising a permanent magnet having means adapted to form a main magnetic path and means adapted to form a shunt magnetic path, means for setting up an alternating flux in said shunt path, and a switching armature adapted to vibrate in said shunt path.

"2. A rectifier for alternating currents, comprising a permanent magnet having means adapted to form a nearly closed magnetic circuit and means adapted to form a shunt magnetic path, means for setting up an alternating flux in said shunt path, and a switching armature adapted to vibrate in said shunt path.

"3. A rectifier for alternating currents, comprising a permanent magnet, having legs and having a bridge between said legs, adapted to form a main magnetic path and means adapted to form a shunt magnetic path, an alternating current winding arranged to set up an alternating flux in said shunt path, and a switching armature adapted to vibrate in said shunt path.

"4. A rectifier for alternating currents, comprising a permanent magnet, having means adapted to form a main magnetic path and means adapted to form a shunt magnetic path, an alternating current winding arranged to set

up an alternating flux in said shunt path, and a switching armature adapted to vibrate in said shunt path and connected with said winding."

"8. An alternating current rectifier system, comprising a permanent magnet having means adapted to form a main magnetic path and means adapted to form a shunt magnetic path, an alternating current winding adapted to set up an alternating flux in said shunt path, a source of alternating current connected with said winding, a direct current circuit, and a switching armature adapted to connect said source with said circuit."

The patent of defendant Wehmeier, which was issued to him subsequent to the issuance of the Ballman patent, illustrates, and the alleged infringing device consists also essentially of, a horseshoe magnet, a similar electromagnet, and a similar vibrating armature. The sole material difference seems to consist in the position in which, relative to the horseshoe magnet, the electromagnet is placed in the devices. In the Wehmeier, or alleged infringing, device this electromagnet is placed between the legs of the horseshoe magnet. The leg, however, is not bent, but retains its usual or commercially ordinary form.

[1] The answer of defendants, so far as I need consider it, the condition of the evidence adduced being regarded, is substantially that the patent of plaintiff Ballman is void on account of anticipation for lack of invention, regard being had to the state of the prior art as disclosed by many prior patents. This state of the prior art, is, I repeat, upon the answer bottomed upon divers prior patents issued to Wilson and some thirty-three others. There is also a specific denial of the fact that the device, made by defendant corporation under the junior patent of defendant Wehmeier, infringes the device made under the senior patent to Ballman. The evidence of the experts, particularly the expert Boyden, called by plaintiffs, is to the effect that defendant's device has both a shunt path and a main path for the magnetic flux, and that these paths are produced by a mere slight change in the position in which the electromagnet is placed relative to the legs of the horseshoe magnet. Substantially this change of position is brought about by a mere turning of the electromagnet through an arc of 90 degrees and placing the same almost in contact with both poles of the permanent magnet, and effecting this contact merely (as to one end thereof) on a different side of the permanent or horseshoe magnet.

It is too plain for argument that the latter change can constitute no defense. Upon this point defendant does seem to urge, somewhat strenuously, that he has discovered that a closed path, instead of the air gap of plaintiff's device, does not interfere with the efficacy of his device. To this insistence it was urged in the oral argument that such a closed gap makes for the shorter life of the device, even if temporary efficacy is conceded. Be all this as may be, I am constrained upon the question of fact to agree with the experts of plaintiff, and to find, which I do, that the device of defendants, made under the Wehmeier patent, infringes the patent of plaintiff Ballman. It follows, therefore, that if Ballman's patent is not void by reason of anticipation, the decree ought to go for plaintiffs.

In limine, it is urged by plaintiffs that defendants are estopped to

raise the invalidity of the Ballman patent. It is obvious that this question is academic, if it should be considered that the Ballman patent is not void for anticipation. Labor may be saved, therefore, by an examination of this question before I go into the question of whether upon the facts defendants are or are not so estopped.

As stated, the answer of defendants sets up some 34 prior patents which it is urged anticipate the Ballman patent. Only 6 of these are referred to in the brief of defendants, and only 5, namely, Wilson, No. 362,135, Behrend, 648,378, Fassler, 1,131,919, Batten, 711,276, and Burlingame, 928,583, are now urged in the brief as so anticipating the Ballman patent as to render it void for lack of invention, although the patent of Pierce, No. 923,700, is attached to the brief.

[2] It is interesting also, but not determinative, that these prior inventions, with but 2 exceptions, while they were designed to convert alternating currents into direct currents, and were in fact rectifiers, were yet not designed for the commercial use of charging batteries. While interesting, this view is afield from the question before me, and need not be further discussed, since it does not bear decisively upon the legal points up for discussion. The result sought by all of the patents urged as anticipatory was that of converting an alternating current into a direct current, and I do not think there can be any invention in the mere new use of a device old in the particular art. Surely there can be no invention in a wagonjack, old in the art, by the mere change of the use thereof from lifting ox wagons to lifting automobiles.

[3, 4] If the patented device of Ballman has, however, brought about an old result by new means, it constitutes invention, and is patentable. As bearing upon this point, the claims of novelty made by the patentee in the application upon which the patent to Ballman was granted are (taking claim 1 as a type) stated thus:

"A rectifier for alternating currents, comprising a permanent magnet having means adapted to form a main magnetic path and means adapted to form a shunt magnetic path, means for setting up an alternating flux in said shunt path, and a switching armature adapted to vibrate in said shunt path."

The bent arm of the horseshoe magnet and the air gap form the main magnetic path in the Ballman patent, while the shunt path is formed by the electromagnet and the armature acting together; each of the latter furnishing part of this shunt path. In operation the major portion of the magnetic flux follows the main magnetic path. This flux is constant, because it is through a permanent magnet. The flux through the shunt path is not constant, but intermittent, because the electromagnet, which forms a part of the shunt path, is only a magnet while the electric current is passing through it.

The magnetic flux through the main magnetic path, being opposed to the alternating flow, is so strong as to prevent such flow from going through this main path, and consequently the alternating flow is forced to seek a path of less resistance. This path it finds through the shunt path, through which an opposing, but comparatively weak, constant magnetic flux is passing. This magnetic flux the alternating current flux is able to overcome, with the result, so far as I am able to under-

stand the nature of the operation, from the extremely refined nature of the technical description, that the alternating or return phase of the 60-cycle current is prevented from passing through the battery to be charged, thus in simple language leaving the direct phase as a residuum to do the work of charging the battery. In short, I gather that the direct phase of the alternating current flows with, and not against, the magnetic flux, while the return phase of the alternating current flows in a direction opposite to the magnetic flux. Being unable to make headway against the flux of the main magnetic path, this return phase of the alternating current seeks and follows the weaker shunt magnetic flux path which it is able to overcome. This path carries it through its allotted cycle, but shunts it or cuts it out of the battery to be charged.

The two chief difficulties met with in rectifiers built in accordance with the learning of the prior art seem to have been (1) that of permanent retention of the positive and negative poles, and a consequent danger of reversing the charge, the latter, I gather, being but a result of the former; and (2) consequent demagnetization of the permanent magnet. In the maze of the technical learning involved, I am in doubt whether the two results are independent, or whether they both follow and depend upon the cause noted; that is, the retention permanently of fixed and certain positive and negative poles. Legally it does not matter. If by the new method of Ballman the two inimical effects are obviated or overcome, there is invention, whether they are, as to each other, causes or effects; that is, whether they are dependent on, or interdependent of, each other. For apposite to this point Judge Vandevanter in Heekin v. Baker, 138 Fed. 63, loc. cit. 65, 70 C. C. A. 559, 561, says:

"None of the elements was new, and it did not produce a new result; but we think the record clearly disclosed that the combination, although of old elements, was new, and that it accomplished an old result in a more facile, economical, and efficient way. This gave it patentable novelty."

[5] Conceding, then, some of the many contentions of defendants, that there are divers rectifiers which in the main operate upon a similar principle, and utilize similar parts, if yet plaintiff Ballman, by a wholly new combination and utilization of these parts, has now produced a similar general result, though in such a way as to avoid the waste, lack of permanence, and danger of destruction of former devices, he has invented something. As the Supreme Court said in the case of Hobbs v. Beach, 180 U. S. 383, 21 Sup. Ct. 409, 45 L. Ed. 586:

"The invention consists rather in the idea that such change could be made than in making the necessary mechanical alterations."

[6] Some extraneous considerations aiding in this view appear in the record, for it is shown that both plaintiffs and defendants have marketed, relative to similar devices, large quantities of these rectifiers. Plaintiffs, to be exact, have sold in the United States, Canada, Spain, and Australia some 12,000 rectifiers; while defendants, making, as I find, a mechanically similar device, have sold some 5,000 of

their construction. Upon this consideration, what is said by Judge Sanborn in the case of National Hollow Brake Beam Co. v. Interchangeable Brake Beam Co., 106 Fed. 693, loc. cit. 707, 45 C. C. A. 544, 558, is in point:

"It is true that the extensive use of a machine or combination which is clearly without novelty does not dispense with that statutory requirement, and that it will not alone sustain a patent. McClain v. Ortmayer, 141 U. S. 419, 428, 12 Sup. Ct. 76, 35 L. Ed. 800; Duer v. Lock Co., 149 U. S. 216, 223, 13 Sup. Ct. 850, 37 L. Ed. 707; Olin v. Timken, 155 U. S. 141, 155, 15 Sup. Ct. 49, 39 L. Ed. 100; Klein v. City of Seattle, 77 Fed. 200, 204, 23 C. C. A. 114, 118, 44 U. S. App. 741, 748. But where the question of novelty is fairly open for consideration under the law, the fact that a patented device or combination has displaced others which had previously been used to perform its function, and has gone into immediate and general use, is pregnant and persuasive evidence that it involves invention."

[7] For these reasons, while the case is a fairly close one, I conclude that the device of Ballman was a patentable one, and that the later device of defendant Wehmeier is an infringement thereof. I need not consider the fact that defendant's device is also patented, but by both a later application and a later issuance. Robinson on Patents, 922; Curtis on Patents, 322; Walker on Patents, 347; Clough v. Baker, 106 U. S. 166, 1 Sup. Ct. 188, 27 L. Ed. 134; Consolidated Safety Valve Co. v. Crosby, etc., Co., 113 U. S. 157, 5 Sup. Ct. 513, 28 L. Ed. 939; Electric Candy Machine Co. v. Morris (C. C.) 156 Fed. 972.

It follows that the relief prayed for by plaintiffs ought to be granted. Let a decree be drawn accordingly.