## LACLEDE CHRISTY CLAY PRODUCTS CO. v. CITY OF ST. LOUIS.

(District Court, E. D. Missouri, E. D.   January 8, 1921.)

No. 5174.

1. Patents ⬅➡328—No. 986,455, claims 1 to 3, for furnace arch, held anticipated, but infringed if valid.

Claims 1 to 3 of the Girtanner patent, No. 986,455, for a furnace arch consisting of a pair of I-beams, brackets supported thereby, with flanges on the lower edges, and tiles provided with grooves to receive such flanges, held anticipated; also held infringed, if valid.

2. Patents ⬅➡178—Claims for straight arch covers hipped arch.

Though a patent for a furnace arch illustrated only a straight roofed arch, a hipped arch was within its range of protection where the construction of such arch involved only the use of a bracket having the angle of attachment modified by a mere difference in forging or by the use of shims.

3. Patents ⬅➡237—Parts performing same function held equivalents, though differing in shape and method of support.

Where the tile hanger in defendant's furnace arch performed precisely the same functions as the brackets in plaintiff's arch, though differing in shape and the method of support, and mere mechanical skill was involved in making the change, the parts were equivalents.

4. Patents ⬅➡314—Infringement is question of fact.

The matter of infringement, in its final analysis, is a question of fact.

5. Patents ⬅➡39—Use of I-beams instead of channel beams not patentable novelty.

The use of I-beams instead of channel beams in the construction of fire arches constitutes no patentable novelty.

---

⬅➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**6. Patents ⚏⇒24—Use of multiple piece tile hanger instead of single piece hanger not invention.**

> The use of a multiple piece tile hanger in the construction of fire arches instead of a single piece hanger was not invention.

In Equity. Suit by the Laclede Christy Clay Products Company against the City of St. Louis. Decree for defendant.

Sheridan, Jones, Sheridan & Smith, of Chicago, Ill., and Jesse McDonald, of St. Louis, Mo., for plaintiff.

Carr & Carr, of St. Louis, Mo., for defendant.

FARIS, District Judge. This is an action for an alleged infringement of the Girtanner patent, No. 986,455, for a furnace arch, which patent is owned by plaintiff, as assignee of Girtanner.

[1] There are four claims in this patent, only three of which, however, are involved in this action. Plaintiff selects claim 3 as a fair type of its several claims. I shall do the like. This claim reads as follows:

> "In a furnace arch, the combination with a pair of I-beams extending across the furnace of brackets supported by said I-beams; each of said brackets comprising a pair of separate end pieces, one extending at the front, the other at the rear, of said I-beams, and a separate center piece extending between said I-beams; flanges on the lower edges of both said end pieces and said center piece, and tiles provided with grooves to receive said flanges."

The defenses are: (a) That there is no infringement; (b) that there is no patentable novelty in the alleged invention, the prior art as developed by numerous other patents being regarded; and (c) estoppel. It will be borne in mind that claim 4 is not involved here, and that this discussion does not affect this claim in any wise. It is not in issue, I assume, because not deemed by plaintiff to be infringed by defendant's construction of its furnace arches.

The salient features of plaintiff's patent, so far as the issues here in dispute are concerned, are illustrated by the below drawings or cuts:

It is conceded by plaintiff that the I-beams, *17*, which span the furnace arch transversely, are old in the art, as are likewise the refractory tiles, *23*. The construction of the so-called brackets, *32* and *34*,

their attachment (which was by bolts and nuts) to the I-beams, and their functions, are the points upon which turn the alleged invention and the infringement urged. While it is scarcely pertinent upon the point of novelty, it may be said in passing that the defendant's construction, here complained of, consists essentially of a single I-beam, set transversely and approximately in the longitudinal center of the arch, of a modified I-beam at the rear, which has no flange on the upper rear portion, but an elongated flange on the bottom rear portion, and of an angle plate or angle beam set in the front of the arch and resting against the furnace wall. Upon these several beams and plates the two series of hangers which carry the refractory tiles are placed or rest without being bolted thereto. Rearwardly from the modified I-beam, a cantilever tile carrier is placed, which is supported by a hook forged or molded onto the bottom of this rear I-beam. This cantilever is not involved here, however.

[2] Defendant's arch is a hipped arch as contradistinguished from a straight arch; but, while plaintiff's patent in suit illustrates only the straight roofed arch, yet I take it that a hipped arch is within its range of protection, since the construction of the latter instead of a straight arch only involves in plaintiff's construction the use of a front bracket having the angle of attachment to the front I-beam modified, either by a mere difference in forging, or by the use of shims at the point of attachment. Winans v. Denmead, 15 How. 330, 14 L. Ed. 717.

[3] I am forced to the conclusion that defendant's construction infringes the patent of plaintiff, if the latter, upon the claims before me, possesses patentable novelty. Of course, this view arises from the doctrine of equivalents. In the defendant's device its middle and principal tile hanger, while differing in shape, and while not bolted to, but merely resting on flanges on the equivalent I-beams, yet performs the precise function of plaintiff's brackets. Defendant's front tile hanger likewise is not bolted to its middle I-beam, but is kept in place by projecting flanges and by stress, or rather by pressure against the front angle plate. I think, therefore, the matter is merely one of equivalents. "One thing, to be the equivalent of another, must perform the same functions as the other." Walker on Patents, 436. Undoubtedly the tile hangers of defendant perform precisely the identical functions of those of plaintiff. Mere mechanical skill only was involved in the change of shape and of the method of support. Even a novice in the mechanical art, it is apparent, might devise other methods of supporting these tile hangers.

[4] The matter of an infringement is in the final analysis a question of fact, and that question upon the evidence and exhibits adduced I find for plaintiff and against defendant, provided (and I come next to that point) plaintiff's construction upon the claims here involved possesses patentable novelty.

To beat down the prima facie inference of patentable novelty arising from the issuance of a patent to plaintiff, defendant offered numerous prior patents. I have examined and considered all of these. Some of them relate to building construction and the manner of affixing fireproofing to ceilings and floors. Whether the latter constructions

on account of the different problems to be solved are analogous, I will hereafter consider. I am constrained to hold that the prior art as shown by the older patents offered in evidence anticipated plaintiff's invention.

Among others offered to illustrate this prior art was a former patent to Girtanner, No. 910,809, owned by plaintiff as assignee, but not in suit in this case. The patent last above illustrated a furnace arch having a single bracket, attached to a single transverse I-beam, as shown by the cut which follows:

It is apparent, I conclude, that in the last analysis the patent in this action covers a construction similar in all material respects to that last above illustrated. There are in the patent in the instant case two transverse I-beams instead of one. The one bracket is wholly similar in function (except as to the "removable tip," which is not here involved). Additional length of the arch is obtained by the mere mechanical expedient of using two I-beams instead of one, thus, in effect, spacing further apart the two ends of the brackets, which are common to both patents. This expedient also, in effect, converts the transverse I-beams into a single box beam, such as was used in the prior patent of McKenzie, No. 766,966, which was also offered by the defendant as showing the prior art and urged as anticipatory. The first Girtanner patent (last above illustrated), no less than the instant one, allows the creation of the hipped arch by the permissible expedient of changing the angle of attachment of the forward bracket to the I-beam. This can be accomplished in the first patent by a change in this angle by forging, and in the second by either forging or the use of shims.

[5] The pair of I-beams used and called for is not new in the art. Such I-beams in pairs were used in the older patents for fire arches of Duncan, No. 958,379. They also were used by Green & Gent, No. 676,605, and by Poppenhusen, No. 783,132. Some of these differ, it is true, in using channel beams instead of I-beams, but this variance is in patent law negligible, and obviously constitutes no patentable novelty.

Girtanner's problem in the instant patent, as compared to that in his No. 910,809, above illustrated, was only that of converting his one-piece hanger or double bracket into a multiple piece tile hanger or a multiple bracket. A mere burning in two of the one-piece bracket or an accidental breaking thereof would instantly suggest this change, if it were not otherwise obvious.

[6] I am constrained to consider that there is no invention in the use of a multiple piece tile hanger, instead of a single piece hanger (Howard v. Detroit Stove Works, 150 U. S. 164, 14 Sup. Ct. 68, 37 L. Ed. 1039; D'Arcy v. Staples, etc., Co., 161 Fed. 733, 88 C. C. A. 606; Bernz v. Schaefer [D. C.] 205 Fed. 49; Milwaukee Co. v. Avery, 209 Fed. 616, 126 C. C. A. 572), although I am impressed that this question is the decisive and crucial point in the whole case. Moreover, in the Rosebrough patent, No. 1,086,467 (applied for June 4, 1909), two brackets are used, and to these brackets the tile-carrying member is attached by bolts, thus in effect converting the two brackets into one. In the McKenzie patent, supra, a single bracket or tile hanger similar to one of the brackets used by plaintiff is used, and this single bracket is likewise bolted to the box beam. The mere necessity for making a longer furnace arch would instantly suggest the mechanical expedient of a mere multiplication of these tile-hanging members.

In the art of fireproofing floors and ceilings, urged by defendant as entirely analogous, the use of multiple tile-hanging members resting upon or supported by I-beams is common. In the latter art the ordinary and constantly recurring problem of making a long arch has been met by the use of as many multiples of the single tile hangers as the situation requires.

On the oral hearing I entertained a casual doubt whether, the differing problems to be met regarded, any compelling analogy exists between the art of furnace arches and that of suspending fire proofing from a ceiling. I think there exists such analogy. The chief difference lies, not in the art of suspension, but in the nature of the material suspended. The problem in both arts is to fend the fire and heat away from the suspending material and construction, so as to minimize or avoid destruction of the latter. The difference then lies only in the nature or the degree of refractoriness of the tiles or fire brick and the fireproofing. The latter usually are wholly different, but the problem to be surmounted is similar. Lately I took occasion to say that no invention lies in merely changing the use of a wagon jack from lifting ox wagons to that of lifting automobiles. St. Louis Electrical Works v. Fore, etc., Co. (D. C.) 267 Fed. 440.

I am constrained to conclude that plaintiff's patent here in suit, upon the claims urged, is void for lack of patentable novelty. And since upon this view no occasion exists to consider whether plaintiff is estopped by reason of its alleged participation in constructing the mechanical stoker, I lay the point aside.

It follows that the finding should be for defendant and against plaintiff, and that plaintiff's bill should be dismissed, and it is so ordered.