## LACLEDE-CHRISTY CLAY PRODUCTS CO. v. CITY OF ST. LOUIS.*

(Circuit Court of Appeals, Eighth Circuit.    April 24, 1922.)

### No. 5830.

1. **Patents ☞328—986,455, claims 1 to 3, for furnace arch, held anticipated.**
   Girtanner patent, No. 986,455, claims 1 to 3, for a furnace arch having parallel I-beams on which are brackets from which tile are suspended by tongue and groove arrangement, *held* void for anticipation.

2. **Patents ☞24—Ordinarily separation of parts is not invention.**
   Ordinarily the making of two or more parts out of a thing that had theretofore been used in one part, and using the separate parts to serve the purpose that had been served before the division, is not invention.

3. **Patents ☞26(2)—New combination of old elements, producing new result from new interaction, is invention.**
   A combination involving old elements, brought together in a way not theretofore known, and which produced by their interaction a new and useful result, is patentable.

Appeal from the District Court of the United States for the Eastern District of Missouri; Charles B. Faris, Judge.

Suit in equity for infringement of a patent by Laclede-Christy Clay Products Company against the City of St. Louis. From a decree dismissing the bill (270 Fed. 338), complainant appeals. Affirmed.

Thomas H. Sheridan and Thomas F. Sheridan, both of Chicago, Ill. (Jesse McDonald, of St. Louis, Mo., on the brief), for appellant.

James A. Carr, of St. Louis, Mo. (Henry S. Caulfield and Joseph J. Gravely, both of St. Louis, Mo., on the brief), for appellee.

Before SANBORN, STONE, and LEWIS, Circuit Judges.

LEWIS, Circuit Judge. This suit is for infringement of rights alleged to belong to appellant under Girtanner's Letters Patent 986,455, issued March 14, 1911, on application of January 8, 1910, for a furnace arch. On final hearing the District Judge, in a well-considered opinion, 270 Fed. 338, sustained the defense of anticipation as to the involved claims 1, 2 and 3, and dismissed the complaint. The three claims are so nearly alike that we adopt the course of appellant in setting out only claim 3 as the most specific and best to consider:

"In a furnace arch, the combination with a pair of I-beams extending across the furnace, of brackets supported by said I-beams; each of said brackets comprising a pair of separate end-pieces one extending at the front, the other at the rear of said I-beams, and a separate center piece extending between said I-beams; flanges on the lower edges of both said end-pieces and said center piece, and tiles provided with grooves to receive said flanges."

[1] Broadly speaking, the claim contains three elements separated above by semi-colons, as will be seen; the first and third of which seem without doubt to have been embodied in prior patents set up in the answer. Stimmel's patent, 944,296, issued December, 1909, on application of March 18, 1909, for improvement in tops for furnaces, does not call for I-beams but "main supporting elements" in his claims, and his specification and drawings show three I-beams extending across the furnace, one at the front, rear and center as supports for the tile-carrying elements; Girtanner's earlier patent, 910,809, issued January 26, 1909, for arch for furnaces, has one I-beam transverse the center, supporting integral brackets extending both rearward and forward, —both are of flat arch type. Further, Green and Gent's patent, 676,-606, issued June 18, 1909, for arch for furnaces, calls for "a plurality of transverse girders which rest at their ends on the side walls of the furnace," and Poppenhusen's patent, 783,132, issued February 21, 1905, shows three transverse supporting girders. The purpose of the transverse I-beams or girders in all cases is to give support to the burden of the underhanging firebrick or tile. Thus as to the first element, there was not only anticipation by Stimmel, Green and Gent and Poppenhusen in the use of more than one transverse support, but also we agree with the trial court that the question whether two (or more) I-beams (or girders of other form) should be used, as called for in the three patents last-noted and in Girtanner's second, rather than one as called for in his first patent, is a question answered by mechanical suggestion when it is desired to make the arch longer.

Again, as to the third element, it seems to us there is nothing new in the patent in suit; for Girtanner's first patent has the grooved tile fitting into lateral extensions of pendent portions of the brackets, and Green and Gent call for—

"beams attached to the lower edges of the said girders and extending beneath the same, said beams being provided with lateral flanges, and firebrick provided with lateral grooves in their side faces near their upper surfaces, adapted to engage said flanges of the beams, said firebrick being suspended from said beams with their upper surfaces below and free from all contact with said girders."

This is identical barring choice of terms; one says I-beams and brackets, the other girders and beams, for the same thing. And Poppenhusen shows—

"beams (brackets) provided with flanges at their lower edges which engage prooves in the adjacent side faces of firebrick."

The obvious purpose in all was to position the firebrick in the top of the furnace between the suspending members and direct heat contact, as a shield.

The second element opens the field of contention. Along with it attention is called to the specification:

"It will be evident that with my construction a flat arch of any desired length can be readily supported, and at the same time the separate parts of the arch can be readily renewed in case of injury."

[2] It is insisted that Girtanner's first patent called for one transverse I-beam which supported integral brackets extending rearward and forward over the length of the arch, while the structure disclosed in his second patent, which calls for two I-beams spaced apart, with brackets in three separate pieces, one extending forward from the front I-beam, one extending rearward from the rear I-beam, and one between the two, demonstrates inventive genius in devising means for lengthening the arch. But a plurality of transverse supports was disclosed, as noted, in prior patents, and Girtanner lengthened the arch in the same way by using two beams instead of one. That was anticipated, if patentable; though we think it wholly within mechanical suggestion. Ordinarily, the making of two or more parts out of a thing that had theretofore been used in one part, and using the separate parts to serve the purpose that had been served before the division is not invention. Howard v. Detroit Stove Works, 150 U. S. 164, 14 Sup. Ct. 68, 37 L. Ed. 1039; D'Arcy v. Staples & Hanford Co., 161 Fed. 733, 88 C. C. A. 606; Mueller Mfg. Co. v. Mfg. Co. (D. C.) 164 Fed. 991; Gen. Elec. Co. v. Heat & Motor Co. (D. C.) 205 Fed. 42.

[3] However, where a discovery embodies co-acting elements, although they be old, yet, if when brought together in a way not theretofore known, they produce by their interaction a new and useful result, the combination is patentable, Regent Mfg. Co. v. Penn, Elec. Mfg. Co., 121 Fed. 80, 83, 57 C. C. A. 334; and if one of the elements in the combination be removed or changed so that their interaction is then in another way (in obedience to a different co-operative law), there is nevertheless invention, although the same result is attained; for in that case a different idea of means expresses the discovery, and the new is not an equivalent of the old. 1 Robinson on Patents, § 254. But the inquiry in such a case is always one of fact, whether the change or rearrangement of those elements has, in their co-action, produced the old result in a different way; and here we fail to find that it has

done so. The three elements in combination, whether the brackets be integral or in three parts, were utilized for the same purpose, and perform the same function in the same way and produce the same result for which they were used in other prior patents. Whether integral or in separate parts, the one useful purpose of a bracket, so-called, was to engage the tile and hold them suspended between the fire and the supporting elements. But in all the patents that have been mentioned this purpose was successfully attained in the same way.

The principal insistence is on the latter part of the quotation from the specification. It is said that firebrick or tile at the rear end of the furnace are subject to the greatest heat, that they are liable to give way and the end of the bracket may become damaged or burned off, and that repair is made easy by simply removing that part of the bracket and putting in a new part, leaving undisturbed the remaining parts. We think the answer to this, and all other claims based on a tile-supporting bracket of cantilever form, is McKenzie's patent, issued August 9, 1904, for fire arch for furnaces, in which claim 1 reads:

"In a fire arch of the class described, the combination of beam mechanism arranged transversely across the furnace, a plurality of brackets attached thereto and extending inwardly therefrom, a plurality of beams longitudinally disposed and removably attached to the inwardly extending brackets and provided with grooves in the lower portion thereof, and a plurality of fire brick or tile provided with portions engaging the grooved mechanism of the longitudinal beams to permit the easy insertion or removal of said tile mechanism, substantially as described."

The claimed purpose to be attained (easy repair and renewal of brackets) appears to be as readily attainable by the use of one as by the use of the other, that is, the means in the two patents are equivalents; and McKenzie was first.

Affirmed.