## LENSCH et al. v. METALLIZING CO. OF AMERICA et al.

### No. 10000.

Circuit Court of Appeals, Ninth Circuit.

June 3, 1942.

Rehearing Denied July 25, 1942.

Herbert A. Huebner and Conrad C. Caldwell, both of Los Angeles, Cal., for appellants.

William R. Litzenberg, of Los Angeles, Cal., for appellees.

Before HANEY, STEPHENS, and HEALY, Circuit Judges.

HANEY, Circuit Judge.

In this action brought by appellants for infringement of their patent, appeal was taken from the order dismissing the action on the ground of non-infringement.

This is the second chapter of litigation in this court involving patents in the field of metal spraying. In Emmett v. Metals Processing Corporation, 9 Cir., 118 F.2d 796, we considered the process of metal spraying. The present litigation involves a machine used in the process. The history of the entire field of uniting metals probably begins with either the discovery that two pieces of metal could be united by melting, or the discovery of the simple weld long used by the blacksmith.

Morf patent No. 1,128,175 issued February 9, 1915 "relates to a method according to which glass or other substances hereinafter referred to, preferably in the form of rod or wire, is melted, divided and thrown onto a surface under considerable pressure, whereby cohesive coatings of any desired thickness are produced". Several different methods are shown but the first is utilized by the patent now in issue. Such method discloses a rod being pushed or fed through a tube, which acts as a guide therefor, being melted by ignited gas emitted from another tube, and the molten material being blown in fine particles on another surface by compressed air emitted from yet another tube. It is pointed out in the specification that "the speed at which the rod is fed" to the flame has an important bearing on the success of the project. The patent in issue combines in one device called a "gun", a mechanism for feeding the rod, the tube emitting the gas, called the combustion unit, and the tube emitting compressed air which has two functions: (a) to operate the feeding mechanism; and (b) to blow the molten material.

British patent No. 268,431 issued to Metallisation Limited on an application dated September 20, 1926. The specification states: " * * * the feed of the material, the melting and the spraying are effected automatically or mechanically at a proportional rate in order to ensure regularity of working. For this purpose the blast effecting the atomising of the melted substance, on its way to the nozzle is passed through a turbine which actuates feed rollers for the solid non-pulverulent material which is in the form of wire and the air and gas supply required for the melting operation are controlled simultaneously by a valve or separately but also independently by auxiliary regulating means."

The mechanism disclosed therein includes a turbine fixed on a shaft and a worm on the other end thereof, which operates a worm gear placed on a second shaft at right angles to the first; the other end of the second shaft has another worm which operates a worm gear on a third shaft which is parallel to the first; the other end of the third shaft has a roller and a gear wheel fixed thereto; a similar roller and gear wheel are attached to a fourth shaft and are supported by a hinged lid so that the upper roller and gear wheel may be released from engagement with the lower roller and gear wheel. A part of the compressed air is led to the turbine, and the other part to the combustion chamber where it blows the melted material through the nozzle. The compressed air and the ignited gas enter the combustion chamber through tubes. In use the rod of material to be sprayed is placed between the rollers. The compressed air turns the turbine which in turn, through the shafts, worms and gears, turns the rollers which thus feed the rod into the combustion chamber, where it is melted and blown through the nozzle.

Patent No. 1,917,523 issued July 11, 1933 to Irons and Waldock discloses a device practically identical to the British patent to Metallisation Limited as above described. Other patents cited need not be mentioned.

The patent in issue, No. 2,096,119 issued October 19, 1937, uses the combination used by Irons and Waldock and Metallisation Limited, that is, a turbine, two worms and gears and geared feed rolls. In appellants' gun, the turbine is on one side of the rod in a housing, and the worms and gears are in a housing on the other side of the rod, there being an open channel between the two housings where the feed rolls are placed, and thus the rod and the feed rolls are visible.

Claims 2, 3 and 4 are in issue but we need not state in detail all the elements included therein. The particular elements said to show novelty and included in various of the claims are: (1) an open channel between the turbine housing and the transmission housing; (2) wire feeding wheels located between the sides of such channel; and (3) an abutment in front of the power unit against which the detachable combustion unit is placed.

The court below held the claims to be valid after narrow construction, but held because there was less visibility in appellee's device than in the patented one, there was no infringement.

■ Two questions are argued: (1) Is the patent in issue invalid because of anticipation? (2) Does the device of appellee infringe the patent? We hold the patent to be invalid, thus making discussion of the second question unnecessary.

Appellants' patent shows no discovery in the art which had not been disclosed by Morf, that is, the melting of a rod by a flame and the blowing of the molten metal by compressed air. The device patented brings together the essentials of that process disclosed by Morf, that is, the tube to conduct the gas, the tube to conduct the compressed air, and a feed for the rod to be melted. The device combined the two tubes in a detachable combustion unit, and uses a power unit, consisting of a turbine, and a transmission unit, consisting of two worms, two worm gears, and two geared feed wheels. The same elements are disclosed in the British patent and the Irons and Waldock patent above mentioned. Appellants' device shows no change in elements, arrangement, or operation from the cited patent except in the three respects mentioned above.

■ The first two features claimed to impart novelty consist of the location of the feed wheels in an open channel between the power housing and the transmission housing. The only change from the previous patents made by appellants is in the form or shape of the housing, so that the feed wheels are located between the two housings. It was not invention to change the shape or form of the housings (Eskimo Pie Corporation v. Levous, 3 Cir., 35 F.2d 120, 122; Hayes Pump & Planter Co. v. Friend Mfg. Co., 2 Cir., 8 F.2d 33, 35) or to make one housing into two. Avery-Loeb Electric Co. v. Markel, 6 Cir., 247 F. 109, 112; Wagenhorst v. Hydraulic Steel Co., 6 Cir., 27 F.2d 27, 32; Laclede-Christy Clay Products Co. v. City of St. Louis, 8 Cir., 280 F. 83, 85.

■ The other change, if it be a change, is the so-called abutment, against which the detachable combustion unit is placed. The abutment is, in fact, merely the end of the transmission housing. The combustion unit of Irons and Waldock is also placed against the end of the housing. The only difference is that appellants have two housings and the combustion unit is placed against the end of one of them, whereas Irons and Waldock have only one housing against which the combustion unit is placed. Such change required, if anything, no more than mechanical skill.

Affirmed.

STEPHENS, Circuit Judge.

I dissent.

The Lensch apparatus is so conceived and constructed, contrary to all prior art, as to leave the metal feeding rod and the feeding rod mechanism clear of housing and from other mechanical features of the apparatus, and thereby enables friction droppings from the fuse metal rod to clear the apparatus, and allows the liberation of gas, avoiding the possibility of backfire, and allows a clear view of the metal rod feeding mechanism during operation. In my opinion the trial court was right in holding these improvements to constitute invention. And, too, it is well to remember that the burden is upon him who attacks the validity of a patent.

Unquestionably, as the trial court held, the patent in suit has a narrow range and

the patented features do not purport to constitute a discovery for accomplishing a new and useful service. But it will not do to resolve away the property interests of inventive minds by attributing a distinct advance in the art to the catchall of mere mechanical skill. Improvements are made on an article in use, and some are clearly mechanical refinements devoid of advance ideas. Such are not invention. But the Lensch apparatus is more than a refinement of the original. On the other hand, appellees' "Mogul" apparatus is about as near a perfect reproduction of the patented apparatus as a skilled mechanic would ordinarily make. Mechanically, it is similarly constructed, with the Lensch open features in place of the closed housing of the old machines. The "Mogul" by reason of adopting the changed structure of the patented article eliminates the three faults found in the machines of the prior art as heretofore mentioned—although admittedly the point of visibility in this apparatus is less pronounced than in the patented article.

I think the trial court was wrong in holding against infringement. The judgment should be reversed and the case remanded.